**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1242

_____

| | |
|---|---|
| Hornell Brewing Co., doing business as Ferolito, Vultaggio and Sons, Inc.; Heileman Brewing Co., Inc.; John Ferolito, Individually; Don Vultaggio, Individually, | * <br> * <br> * <br> * <br> * <br> * |
| Plaintiffs-Appellees, | * <br> * |
| v. | *    Appeals from the United States |
| | *    District Court for the |
| The Rosebud Sioux Tribal Court; Hon. Stanley Whiting, Pro-Tem Tribunal Judge; | *    District of South Dakota. <br> * <br> * <br> * |
| Defendants, | * <br> * |
| Seth H. Big Crow, Sr., as Administrator of the Estate of Tasunke Witko, a/k/a Crazy Horse and as a member of and representative of the class of heirs of said estate, | * <br> * <br> * <br> * <br> * <br> * |
| Defendant-Appellant, | * |
| ------------------------------------------------- | * |
| Rosebud Sioux Tribe, | * <br> * |
| Amicus Curiae. | * |

_____

No. 97-1243

_____

| | |
|---|---|
| Hornell Brewing Co., doing business as Ferolito, Vultaggio and Sons, Inc.; Heileman Brewing Co., Inc.; John Ferolito, Individually; Don Vultaggio, Individually, | * * * * * |
| | * |
| Plaintiffs-Appellees, | * |
| | * |
| v. | * |
| | * |
| The Rosebud Sioux Tribal Court; Hon. Stanley Whiting, Pro-Tem Tribunal Judge; | * * * |
| | * |
| Defendants-Appellants, | * |
| | * |
| Seth H. Big Crow, Sr., as Administrator of the Estate of Tasunke Witko, a/k/a Crazy Horse and as a member of and representative of the class of heirs of said estate, | * * * * * |
| | * |
| Defendant, | * |
| ------------------------------------------------- | * |
| Rosebud Sioux Tribe, | * |
| | * |
| Amicus Curiae. | * |

_____

No. 97-1244

_____

| | |
|---|---|
| Hornell Brewing Co., doing business | * |
| as Ferolito, Vultaggio and Sons, Inc.; | * |
| Heileman Brewing Co., Inc.; John | * |
| Ferolito, Individually; Don Vultaggio, | * |
| Individually, | * |
| | * |
| Plaintiffs-Appellants, | * |
| | * |
| v. | * |
| | * |
| The Rosebud Sioux Tribal Court; | * |
| Hon. Stanley Whiting, Pro-Tem | * |
| Tribunal Judge; Seth H. Big Crow, Sr., | * |
| as Administrator of the Estate of | * |
| Tasunke Witko, a/k/a Crazy Horse and | * |
| as a member of and representative of the | * |
| class of heirs of said estate, | * |
| | * |
| Defendants-Appellees, | * |
| | * |
| ------------------------------------------------ | * |
| Rosebud Sioux Tribe, | * |
| | * |
| Amicus Curiae. | * |

_____

Submitted: November 17, 1997
Filed: January 14, 1998

_____

Before BOWMAN, LAY, and MURPHY, Circuit Judges.

_____

-3-

LAY, Circuit Judge.

Tasunke Witko, also known as Crazy Horse, was a renown and beloved leader of the Oglala Sioux. He died in 1877. The Lakota people revere Crazy Horse as a spiritual and political leader. We take judicial notice of the fact that on January 15, 1982, the United States Postal Service issued a stamp honoring Crazy Horse, and there is a national Crazy Horse Monument under construction in South Dakota.

Crazy Horse opposed the use of alcohol by his people. Seth H. Big Crow, Sr., a descendant of Crazy Horse, acting as administrator of Crazy Horse's Estate ("Estate"), brought suit in the Rosebud Sioux Tribal Court[1] contesting the use of the Crazy Horse name by Hornell Brewing Co., doing business as Ferolito, Vultaggio and Sons, Inc., Heileman Brewing Co., Inc., and John Ferolito and Don Vultaggio ("Breweries"). The Estate challenged the Breweries' use of the Crazy Horse name in the manufacture, sale, and distribution of an alcoholic beverage called "The Original Crazy Horse Malt Liquor" ("Crazy Horse Malt Liquor").[2] The complaint asserted defamation, violation of the Estate's right of publicity, and negligent and intentional infliction of emotional distress. The complaint also alleged violations of the Lanham Act, see 15 U.S.C. §§ 1051-1128 (1994), and the Indian Arts and Crafts Act, see 25 U.S.C. §§ 305- 305e (1994). The Estate sought injunctive and declaratory relief, as well as damages.

---

[1] The Rosebud Sioux Reservation is located in South Dakota.

[2] In 1992, Congress enacted a statute banning the use of the name Crazy Horse on the label of any distilled spirit, wine, or malt beverage product. See Pub. L. No. 102-393 § 633, 106 Stat. 1729. In 1993, the United States District Court for the Eastern District of New York concluded the statute violates the First Amendment of the Constitution. See Hornell Brewing Co. v. Brady, 819 F. Supp. 1227, 1245-46 (E.D.N.Y. 1993).

On October 25, 1994, the tribal judge, Honorable Stanley E. Whiting, Pro-Tem Tribunal Judge of the Rosebud Sioux Tribal Court, dismissed the Estate's action on the grounds that the tribal court lacked personal jurisdiction over the Breweries, and it lacked subject matter jurisdiction over the Estate's claims. J.A. at 13-34. The Estate appealed the dismissal of its complaint to the Rosebud Sioux Supreme Court.

On May 1, 1996, the Rosebud Sioux Supreme Court held the Breweries had sufficient contacts with the Rosebud Sioux Reservation to uphold service of process,[3] and the Estate had established "prima facie" subject-matter jurisdiction. Id. at 187-214. The tribal supreme court also held that the tribal court improperly dismissed the Estate's Lanham Act claim.[4] Id. at 216-17. The tribal supreme court held, however,

---

[3]The Rosebud Sioux Supreme Court observed:

> In the advertising label affixed to each bottle of the "Original Crazy Horse Malt Liquor," Defendants clearly exalt and direct their activities to the forum. The label ornately proclaims:
>
>> The Black Hills of Dakota, steeped in the history of the American West, home of Proud Indian Nations. A land where imagination conjures up images of blue clad Pony Soldiers and magnificent Native American Warriors, A land still rutted with wagon tracks of intrepid pioneers. A land where wailful winds whisper of Sitting Bull, Crazy Horse and Custer. A land of character, of bravery, of tradition. A land that truly speaks of the spirit that is America.

J.A. at 198.

[4]The Estate alleged a cause of action under section 1125(a) of the Lanham Act, which provides:

> (1) Any person who, on or in connection with any goods or

that the Estate did not have standing to sue under the Indian Arts and Crafts Act.  Id.

services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

at 214-16. [5] The Rosebud Sioux Supreme Court then remanded the case to the tribal court for a "prompt trial on the merits."[6] Id. at 217.

In July 1996, the Breweries filed suit in the United States District Court for the District of South Dakota against the Estate, the Rosebud Sioux Tribal Court,[7] and the

---

[5]Section 305e(c)(1) of the Indian Arts and Crafts Act of 1990 expressly provides:

> (c)    Persons who may initiate civil actions
>
> (1)    A civil action under subsection (a) of this section may be commenced--
>
>> (A)    by the Attorney General of the United States upon request of the Secretary of the Interior on behalf of an Indian who is a member of an Indian tribe or on behalf of an Indian tribe or Indian arts and crafts organization; or
>>
>> (B)    by an Indian tribe on behalf of itself, an Indian who is a member of the tribe, or on behalf of an Indian arts and crafts organization.

25 U.S.C. § 305e(c)(1).

[6]Thereafter, the Rosebud Sioux Tribe filed a motion in the tribal court for permissive joinder as a co-plaintiff under the Rosebud Sioux Tribe Law and Order Code, Rules of Civil Procedure, Rule 20(a). The Tribe asserted an independent right of action under the Indian Arts and Crafts Act. The tribal court granted the Tribe's motion to join as a co-plaintiff. See J.A. at 241.

[7]The Rosebud Sioux Tribe was not joined as a party. It appears in the present appeal as Amicus Curiae.

tribal court judge, seeking declaratory and injunctive relief. The Breweries asserted the tribal court had neither personal jurisdiction over the Breweries, nor subject-matter jurisdiction over the Estate's claims. The district court[8] enjoined the Rosebud Sioux Tribal Court from conducting any further proceedings on the merits of the case. J.A. at 391 (Hornell Brewing Co. v. Rosebud Sioux Tribal Court, Civ. No. 96-3028 (D.S.D. Dec. 3, 1996)). The district court disagreed with the rationale the Rosebud Sioux Supreme Court had used to find subject matter jurisdiction over the Estate's claims.

---

[8]Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

In its discussion of subject matter jurisdiction, the Rosebud Sioux Supreme Court first held <u>Montana v. United States</u>, 450 U.S. 544 (1981), inapplicable to this case.[9] J.A. at 209. The tribal supreme court said <u>Montana</u> dealt only with questions

---

[9]<u>Montana</u> is the initial Supreme Court case addressing the civil authority tribes may exercise over nonmembers carrying on activities within a reservation. <u>See</u> <u>Montana</u>, 450 U.S. at 544. The <u>Montana</u> Court determined the authority of the Crow Tribe to regulate hunting and fishing by non-Indians on lands within the Tribe's reservation owned in fee simple by non-Indians. The Court concluded the Tribe did not have the authority to regulate nonmembers in these particular circumstances but did state:

> To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.

<u>Id.</u> at 565-66 (citations omitted). This passage thus describes two exceptions to the general rule that Indian tribes may not exercise civil authority over the conduct of nonmembers on alienated, non-Indian land within a reservation.

-9-

of statutory construction, is specifically limited to fee lands, and is properly limited to questions of tribal regulatory and legislative authority and not to questions of tribal adjudicatory authority. Id. at 207-10. The tribal supreme court also held that even if Montana were applicable to this case, the Breweries' conduct satisfied both of the Montana exceptions. Id. at 210. The tribal supreme court stated the Breweries' failure to enter into a consensual relationship with the Estate for the use of the name and reputation of Crazy Horse satisfies the first exception. Id. at 211. The tribal supreme court further stated that the Breweries' conduct satisfies the second exception, because the Tribe's health and welfare depend upon the Tribe's ability to provide a forum for resolution of the Breweries' allegedly harmful conduct. Id. at 212.

The United States District Court for the District of South Dakota disagreed, finding Montana directly applicable to this case, and stated that because neither Montana exception was met in this case, the tribal courts lacked subject matter jurisdiction over the Estate's claims. J.A. at 387-88. The district court concluded, however, the Breweries had not exhausted their remedies, "because the tribal court should be given the first full opportunity to determine whether [the Estate] has established the jurisdictional facts by a preponderance of the evidence, as distinguished from merely establishing a prima facie case of jurisdiction." Id. at 386.[10] The district court entered an order enjoining the tribal court from proceeding

---

[10]In the original tribal court decision, the tribal court did not conduct an evidentiary hearing but found The Estate had established a prima facie case of jurisdiction. The Rosebud Sioux Supreme Court faulted the tribal court for not separating the discussions of personal and subject matter jurisdiction. The supreme court, although remanding the case for "prompt trial on the merits," did state that upon remand, "if there [were] any subsequent questions of credibility or fact," the plaintiff must establish the "jurisdictional facts" by a preponderance of evidence. J.A. at 187.

on the merits.  <u>Id.</u> at 391.  It remanded the case to the tribal court for the limited purpose of conducting an evidentiary hearing on the issues of personal and subject matter jurisdiction.  Thus, under the district court's order, this case has been remanded to tribal court for further proceedings as to both personal and subject matter jurisdiction, and the tribal court is enjoined from proceeding on the merits of this case.  <u>Id.</u> at 391-92.

The tribal court, tribal judge, and the Estate have now appealed the issuance of the preliminary injunction, pursuant to 28 U.S.C. § 1292(a)(1).  They argue the Rosebud Sioux Tribal Court has inherent and exclusive jurisdiction over the personal property rights vested in the Estate.  The Breweries have cross-appealed, asserting the order remanding the case for evidentiary hearings on jurisdiction should be vacated, and this court should hold that the tribal court lacks subject matter jurisdiction.  Although the parties assert differing viewpoints as to whether the district court properly issued a preliminary injunction, we need not review this holding since, as we discuss <u>infra</u>, we find the tribal court lacks subject matter jurisdiction over the Estate's claims against the non-Indian Breweries.[11]

We begin our discussion of subject matter jurisdiction by noting that, "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances."  <u>Strate v. A-1 Contractors</u>, ___ U.S. ___, 117 S. Ct. 1404, 1409 (1997) (citing <u>Oliphant v. Suquamish Indian Tribe</u>,

_____

[11]Although the Tribe has now made a claim over the same subject matter in the tribal court, it is not a party to this appeal.  Nonetheless, the preliminary injunction issued by the district court enjoined the tribal court from exercising subject matter jurisdiction as to the claim made by the Tribe against all of the non-Indian defendants.

435 U.S. 191 (1978) and <u>Montana v. United States</u>, 450 U.S. 544 (1981)).[12]  Indian tribes do, however, "retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians <u>on their reservations</u>."  <u>Montana</u>, 450 U.S. at 565 (emphasis added).  The operative phrase is "on their reservations."  Neither <u>Montana</u> nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring <u>outside their reservations</u>.

The activities at issue in this case are the Breweries' manufacture, sale, and distribution of Crazy Horse Malt Liquor.  It is undisputed that the Breweries do not conduct those activities on the Rosebud Sioux Reservation or within South Dakota.  Thus, because the conduct and activities at issue here did not occur on the Rosebud Sioux Reservation, we do not believe <u>Montana</u>'s discussion of activities of non-Indians on fee land within a reservation is relevant to the facts of this case.  More importantly, the parties fail to cite a case in which the adjudicatory power of the tribal court vested over activity occurring outside the confines of a reservation.  The mere fact that a member of a tribe or a tribe itself has a cultural interest in conduct occurring outside a reservation does not create jurisdiction of a tribal court under its powers of limited inherent sovereignty.  The analysis of <u>Montana</u>, and the cases the <u>Montana</u> Court discussed, expressly or implicitly recognize tribes' limited authority over activity occurring within the reservation and tribes' lack of authority "to determine their external relations."  <u>Montana</u>, 450 U.S. at 564 (quoting <u>United States v. Wheeler</u>, 435 U.S. 313, 326 (1978)).  As <u>Montana</u> emphasizes, "exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express Congressional delegation."  <u>Id.</u>

---

[12]There is no federal statute or treaty conferring subject matter jurisdiction over the Estate's claims to the tribal court.

At the time of the tribal court proceedings, as well as at the time of the issuance of the district court's injunction, neither the parties nor the various tribunals directly involved in this case had the benefit of the United States Supreme Court's recent decision in Strate v. A-1 Contractors. Once again, however, the facts of Strate, like Montana, relate to use by non-Indians of fee lands within a reservation. Strate does, however, harmonize Montana with other cases addressing tribal civil authority over nonmembers. See Strate, 117 S. Ct. at 1409-14.

In Strate, Lyle Stockert, a non-Indian driver of a truck owned by A-1 Contractors, a non-Indian company, collided with the automobile of Gisela Fredericks, a non-Indian widow of a deceased member of the Three Affiliated Tribes of the Fort Berthold Indian Reservation. Id. at 1408. The collision occurred on a state highway that crossed through reservation land. Fredericks filed a personal injury suit in tribal court, and the tribal court concluded it had jurisdiction to adjudicate Fredericks' claims. Id.

Shortly thereafter, Stockert and A-1 Contractors filed suit in federal district court, seeking a declaratory judgment that, as a matter of federal law, the tribal court lacked jurisdiction to adjudicate the claims. Id. The district court concluded the tribal court had civil jurisdiction over Fredericks' claims against Stockert and A-1 Contractors, and on cross-motions for summary judgment, it dismissed the suit. Id. at 1409. A divided panel of the Court of Appeals for the Eighth Circuit affirmed. Id. Following a rehearing en banc, and in an eight-to-four decision, the Eighth Circuit Court of Appeals reversed the district court's judgment, concluding that under Montana, the tribal court lacked subject matter jurisdiction over the dispute. Id.

The United States Supreme Court affirmed the en banc decision. The Court equated the state-held highway to non-Indian fee land and concluded the Montana rule and its two exceptions governed the issue of jurisdiction. Id. at 1414. With respect to Montana, the Court stated:

-13-

Montana thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

Strate, 117 S. Ct. at 1409-10. The Court concluded neither Montana exception conferred tribal court jurisdiction over Fredericks' claims. Id. at 1415-16.

In finding that the claims arising from this particular automobile accident did not fall within the reach of the tribal court's adjudicatory power, the Court also discussed the exhaustion requirement now well-established in the cases of National Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845 (1985), and Iowa Mutual Ins. Co. v. LaPlante, 480 U.S. 9 (1987). Id. at 1410-13. In doing so, the Court made clear that the exhaustion rule is based upon "prudential" policies and is not jurisdictional. Id. at 1413. We need not further elaborate on the detailed analysis of the Strate case other than to emphasize the Court's admonition set forth in footnote 14 at page 1416, wherein the Court observed:

When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by Montana's main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. As in criminal proceedings, state or federal courts will be the only forums competent to adjudicate those disputes. Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement, must give way, for it would serve no purpose other than delay.

Strate, 117 S. Ct. at 1416 n.14 (citations omitted).

-14-

Suffice it to say neither the tribal court nor the Estate claim that the first exception of Montana, regarding nonmembers entering consensual relationships with a tribe or its members, applies in this case. Thus, the primary issue the parties raise on appeal relates to Montana's second exception, namely that the activity engaged in by the nonmember Breweries "directly affects the tribe's political integrity, economic security, health, or welfare." Strate, 117 S. Ct. at 1410. As we have noted, however, we deem this issue misleading.

It is a fundamental fact in the present case that the Breweries do not manufacture, sell, or distribute Crazy Horse Malt Liquor on the Reservation. The tribal court asserts that the Breweries do engage in the sale of other beverages, including some alcoholic beverages, on the Reservation. We find, as did the district court, that this argument is irrelevant. This is not the activity for which complaint is made. The only grounds upon which the Rosebud Sioux Supreme Court asserted subject matter jurisdiction was that the Breweries' conduct affects the health and welfare of the Tribe in that the Tribe should be able to provide a forum for resolution of harm suffered by its members on the Reservation. The district court rejected this reasoning and stated:

> If providing a forum for its members would be a sufficient reason to confer subject matter jurisdiction upon the tribal courts when a tribal member is a party to a lawsuit, it follows that the tribal courts would always have civil subject matter jurisdiction over non-Indians. There would have been no reason for the discussion in Montana regarding the broad general rule of no civil jurisdiction over non-Indians and the two narrow exceptions to that general rule. Therefore, this Court does not agree that the second Montana exception provides tribal civil subject matter jurisdiction over the brewing companies in this case, under the present record.

J.A. at 388. We agree with this conclusion.

-15-

On appeal, the tribal court also asserts that although Crazy Horse Malt Liquor was not sold on the Rosebud Sioux Reservation, it was advertised outside the Reservation and on the Internet (available to tribal members on the Reservation), and therefore, it had a direct effect upon tribal members. We find this contention specious. Advertising outside the Reservation and on the Internet does not fall within the rubric of directly affecting the health and welfare of the Tribe. The Internet is analogous to the use of the airwaves for national broadcasts over which the Tribe can claim no proprietary interest, and it cannot be said to constitute non-Indian use of Indian land.

Following the admonition of the Supreme Court in <u>Strate</u>, we think it plain that the Breweries' conduct outside the Rosebud Sioux Reservation does not fall within the Tribe's inherent sovereign authority. We deem it clear the tribal court lacks adjudicatory authority over disputes arising from such conduct. We emphasize that our decision in this case does <u>not</u> turn upon the merits of the claims asserted by the Estate. The Estate and other interested parties may assert these claims in federal district court. Our holding relates solely to the adjudicatory authority of the tribal court.

Under the circumstances, we see no need for further exhaustion. We therefore vacate the order of remand for further exhaustion. In view of our holding that the tribal court lacks adjudicatory authority, we also see no further need for the preliminary injunction the district court issued. We are confident that all the parties will be governed by the law of the case. We therefore order the preliminary injunction dissolved.

For the foregoing reasons, the judgment of the district court is hereby vacated, and the case is remanded to the district court with instructions that the district court amend its judgment to hold that the Rosebud Sioux Tribal Court lacks adjudicatory

authority over the dispute arising from the Breweries' use of the Crazy Horse name in the manufacturing, sale and distribution of Crazy Horse Malt Liquor outside the Rosebud Sioux Reservation.

IT IS SO ORDERED.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.