ALLSTATE INDEMNITY COMPANY,
an Illinois corporation, Plaintiff–
Appellant,

v.

Vina STUMP, as personal representative
of the Estate of Harold Stump; Ver-
non The Boy as personal representa-
tive of the Estate of Victor The Boy;
and Arthur Windy Boy, Associate
Judge, Chippewa Cree Tribal Court, in
his official capacity only, Defendants–
Appellees.

No. 97–35822.

United States Court of Appeals,
Ninth Circuit.

Argued Sept. 16, 1998.

Submission deferred Sept. 28, 1998.

Resubmitted Jan. 8, 1999.

Decided Aug. 19, 1999.

As Amended Sept. 13, 1999.

Mikel L. Moore, Christensen, Moore, Cockrell & Cummings, Kalispell, Montana, for the plaintiff-appellant.

Gary Zadick, Ugrin, Alexander, Zadick, & Higgins, Great Falls, Montana; Daniel Belcourt, Tribal Attorney, Chippewa Cree Tribe, Box Elder, Montana, and Patrick J. Flaherty, Great Falls, Montana, for the defendants-appellees.

Maylinn Smith, Indian Law Clinic, The University of Montana, Missoula, Montana, for the amicus curiae.

Before: SCHROEDER, WIGGINS, and McKEOWN, Circuit Judges.

SCHROEDER, Circuit Judge:

This is a dispute between the estates of deceased members of an Indian tribe and an off-reservation insurer over the insurer's allegedly bad faith denial of insurance coverage for a fatal automobile accident. The accident occurred on a road maintained by the tribe and located on tribal land. The insurer, Allstate, filed this declaratory judgment action in district court to challenge tribal court jurisdiction over the estates' suit against Allstate for failure to settle. The district court held that the tribal court had jurisdiction and entered judgment for the defendant estates.

We hold that there is a genuine dispute over whether the estates' claim arose on the reservation, where the accident occurred and the insureds resided, or off the reservation, where the insurer was located. Because it is not plain that the tribal court lacks jurisdiction, we conclude that the insurer is required to exhaust its remedies in tribal court before challenging tribal jurisdiction in federal court, and we order the district court to stay this declaratory judgment action. *See Strate v. A-1 Contractors*, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997); *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987).

## I. Facts

This dispute stems from a 1995 car accident on a tribal road in the Rocky Boy Reservation in Montana. The accident occurred when Dennis Sangray, a member of the Chippewa Cree Tribe, lost control of his vehicle, killing his two passengers, Harold Stump and Vernon The Boy, who were also enrolled members of the Tribe. Sangray held an Allstate liability policy that he had purchased from the independent Erickson–Baldwin Insurance Agency in Havre, Montana, which is outside the Rocky Boy Reservation. Sangray habitually paid the insurance premiums in cash at the Erickson–Baldwin office. The policy itself bore Sangray's reservation address, and Allstate mailed the policy and premium statements to that address.

The representatives of the victims' estates filed claims with Allstate for recovery under Sangray's liability policy. Allstate denied coverage, taking the position that the accident occurred on the early morning hours of April 1 and that Sangray's policy had expired on midnight on March 31. Various off-reservation communications took place between Allstate and counsel for the estates of the deceased. Relatives of the deceased made inquiries from the reservation by telephone.

The estates sued Allstate in tribal court for a declaration that Sangray was covered under the Allstate policy and for damages under Montana's unfair claims settlement practices statute, Mont.Code Ann. § 33–18–101 *et seq.* The parties settled the issue of coverage but the unfair settlement action remains pending before the tribal court. Allstate brought this federal action to challenge the tribal court's jurisdiction to entertain the bad faith settlement action. The district court held that the tribal court had jurisdiction under the "consensual relationship" exception to the rule of *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), agreeing with the estates that the dispute arose out of the consensual relationship between Allstate and its insured, Dennis Sangray. Allstate appealed the dismissal of the case. We deferred deciding the appeal pending the decision of the en banc court in *County of Lewis v. Allen,* 141 F.3d 1385 (9th Cir.), withdrawn and revised en banc, 163 F.3d 509 (1998).

## II. Analysis

■ We begin with the general rule that a party may not sue in federal court to challenge tribal court jurisdiction until it has first exhausted its remedies in tribal court. *See Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987). Exhaustion of tribal remedies includes tribal appellate review on the question of jurisdiction; thus, federal courts should not intervene until tribal appellate review is complete. *See id.* at 17, 107 S.Ct. 971. Although Allstate contends that the Supreme Court's latest pronouncement on tribal jurisdiction, *Strate v. A–1 Contractors,* 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), has done away with the exhaustion requirement, the Supreme Court there affirmed that the exhaustion requirement applies unless "it is plain" that the tribal court lacks jurisdiction over the dispute. *See id.* at 459 n. 14, 117 S.Ct. 1404. Because Allstate has not exhausted its tribal remedies, it is entitled to a declaratory judgment only if the *Strate* futility exception applies.

■ Allstate argues that appellees have waived or effectively conceded the exhaustion issue by not raising it in the district court, which did not even address exhaustion in its order. Exhaustion, however, cannot be waived. A district court has no discretion to relieve a litigant from the duty to exhaust tribal remedies prior to proceeding in federal court. *See Burlington Northern R.R. Co. v. Crow Tribal Council,* 940 F.2d 1239, 1245 (9th Cir. 1991). Despite appellees' failure to argue exhaustion, it is appropriate to examine the issue sua sponte because of the important comity considerations involved. *See United States v. Tsosie,* 92 F.3d 1037, 1041 (10th Cir.1996) (raising issue of exhaustion sua sponte and remanding to district court); *see also Stone v. San Francisco,* 968 F.2d 850, 855–56 (9th Cir.1992) (court may consider sua sponte issue touching on comity).

■ *El Paso Natural Gas Co. v. Neztsosie,* —— U.S. ——, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999), does not prevent us from considering the exhaustion issue. There, the Supreme Court vacated our decision to consider sua sponte a partial injunction against tribal court jurisdiction that the plaintiffs had failed to appeal. *See id.* at 1434. The Court reasoned that the comity considerations surrounding the exhaustion doctrine did not justify an exception to the rule requiring cross-appeals. *See id.* at 1435. By contrast, in this case there was no reason for the plaintiff estates to cross-appeal the exhaustion issue, for the district court had not ruled on exhaustion, but had granted the estates a greater remedy by definitively ruling that the tribal court had jurisdiction. *Neztsosie* therefore does not apply.

■ Analysis of Indian jurisdiction over cases involving non-Indians generally turns on whether the tribe controls the land on which the dispute arose. The leading case on Indian jurisdiction is *Montana v. United States,* 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), in which the Supreme Court held that an Indian

tribe could not regulate hunting by non-Indians on non-Indian-owned fee land within the reservation. Although tribes may regulate hunting on land owned by the tribe or held in trust by the United States for the tribe, tribes lack jurisdiction over the activities of non-Indians on non-Indian fee land except when (1) the non-members have entered into "consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements," or (2) the non-Indians' conduct "threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of a tribe." *Id.* at 565–66, 101 S.Ct. 1245.

The Supreme Court recently expanded the *Montana* rule in *Strate*. There, the Court considered whether a tribe could exercise jurisdiction over an accident injury claim where the accident involved non-Indians and occurred on a state highway that ran through a reservation. The United States had granted North Dakota a right-of-way across the reservation for maintenance of a highway. The right-of-way was open to the public and the traffic on it subject to state control. The tribe had forfeited the right to control the highway and to exclude others from the land. Thus, the Court held that the highway right-of-way was "equivalent, for nonmember governance purposes, to alienated, non-Indian land." *Strate*, 520 U.S. at 454, 117 S.Ct. 1404.

As the Supreme Court stated in *Strate*, "tribes retain considerable control over nonmember conduct on tribal land." *Id.* Although the Court in *Montana* endorsed "the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe," the Court also stated that "Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations." *Montana*, 450 U.S. at 565, 101 S.Ct. 1245. Generally speaking, the *Montana* rule governs only disputes arising on non-Indian fee land, not disputes on tribal land; otherwise, the *Strate* Court's analysis of why

a state highway on tribal land was equivalent to non-tribal land would have been unnecessary.

■ In this case, the parties disagree as to whether the lawsuit arose on the tribal road, where the auto accident occurred, or at Allstate's off-reservation offices, where it allegedly committed insurance bad faith. Allstate's position, that the court must look to the off-reservation settlement activities, is foreclosed by the Supreme Court's holding in *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), in which a tribal court action was allowed to continue under nearly identical circumstances.

LaPlante, a member of the Blackfeet Tribe, had been injured in an automobile accident on the Blackfeet reservation in the course of his employment for the Wellman Ranch, a company owned by Blackfeet Indians. After unsuccessful attempts to settle his claim for injuries, LaPlante sued Wellman's off-reservation insurer, Iowa Mutual, in tribal court for bad faith refusal to settle. Iowa Mutual sued in federal district court for a declaration that LaPlante's injuries were not covered by the policy in question. *See id.* at 11–13, 107 S.Ct. 971. Following its earlier decision in *National Farmers Union Ins. Cos. v. Crow Tribe*, 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), the Court held that the federal court should dismiss or stay the action until Iowa Mutual had exhausted its tribal court remedies. *See LaPlante*, 480 U.S. at 19–20, 107 S.Ct. 971.

Allstate stands in the same position as Iowa Mutual. As in *LaPlante*, the insured and injured parties in this case were tribal members who lived on the reservation; the accident occurred on the reservation; and the insurer is an off-reservation entity that sold a policy to a tribal member. *LaPlante* thus indicates that exhaustion is required here.

We followed *LaPlante* in *Stock West Corp. v. Taylor*, 964 F.2d 912 (9th Cir. 1992). Stock West, a non-Indian company

that operated a sawmill on a reservation, became involved in a protracted contractual dispute with the tribe. Stock West sued the tribe's attorney in federal court, alleging that the attorney had committed malpractice and misrepresentation by delivering a false and misleading letter to a Portland bank that had considered a loan to Stock West for the construction of the sawmill. The attorney moved for dismissal on the ground that exhaustion was required under *LaPlante* and *National Farmers* because the dispute arose on the reservation, where he wrote the letter and where the sawmill was built. Stock West argued that the dispute arose off the reservation because the letter was delivered outside the reservation. We held, en banc, that Taylor had raised a colorable issue as to whether the dispute arose from the on-reservation contractual relations of the tribe and Stock West. *See Stock West,* at 919. Because the assertion of tribal jurisdiction was "plausible," we required abstention in favor of tribal court. *See id.* at 919–20. This case should reach the same result.

Allstate attempts to distinguish this case from *LaPlante* and its progeny, arguing that this case is more analogous to the facts underlying the Eighth Circuit's decision in *Hornell Brewing Co. v. Rosebud Sioux Tribal Court,* 133 F.3d 1087 (8th Cir.1998), a case in which the non-Indian defendant had not conducted any activities on the reservation or communicated with anyone there. In that case, the estate of Crazy Horse brought suit against a brewery that marketed a beverage called "The Original Crazy Horse Malt Liquor." The estate sued in tribal court for defamation, invasion of privacy, and infliction of emotional distress. The Eighth Circuit concluded that tribal jurisdiction did not exist because the brewery had not conducted any activities on the reservation related to its product. *See id.* at 1091. Allstate's conduct in this case, unlike the brewery's in *Hornell,* is related to the reservation. Allstate sold an automobile insurance policy and mailed monthly premium statements to an Indian

resident of the reservation. After the accident on the reservation, Allstate's agents communicated with the Indians and their counsel. *Hornell* is not on point.

This case is on all fours with *LaPlante,* where an off-reservation insurer was sued for refusal to settle a claim arising in Indian country. The authorities thus suggest that the estates' bad faith claim should probably be considered to have arisen on the reservation. At the least, they make it impossible to say that the claim plainly arose off the reservation.

■ In addition to its challenge on subject matter jurisdiction, Allstate contends that the tribal court lacks personal jurisdiction in this case. This argument is foreclosed entirely by *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911 (9th Cir.1990), in which we held that a Montana state court, for purposes of an accident injury claim arising in Montana, had personal jurisdiction over Portage, a Canadian insurer that sold a policy covering travel in Montana. Here, Allstate not only sold a policy covering travel in the Rocky Boy Reservation, it sold the policy to a resident of the reservation. This sale of a policy is more clearly a "purposeful availment" of the forum's laws than was Portage's inclusion of Montana within its coverage territory. *See id.* at 913. As in *Portage,* this dispute arose out of the insurance coverage. *See id.* at 914–15. Finally, it is difficult to see why Allstate's amenability to suit in tribal court is any less "reasonable" than a state's exercise of jurisdiction over a foreign insurance company.

■ Allstate argues that a more rigorous test for personal jurisdiction should apply to tribal courts because of the diminished sovereignty of the tribes. Allstate fails to cite a single case suggesting that the tribes' dependent status within this country affects the exercise of personal jurisdiction by their courts. *Montana* and *Strate* address the effect of the tribes' limited sovereignty on tribal courts' subject matter jurisdiction. *Wilson v. Marchington,* 127 F.3d 805 (9th Cir.1997), which

**1076**

notes that a tribal court must have personal jurisdiction for its judgment to be enforceable, *see id.* at 811, does not imply that a more rigorous test of personal jurisdiction applies to tribal courts. Allstate argues that it would be unreasonable to subject an insurer to personal jurisdiction in tribal court because tribal members are United States citizens and can easily avail themselves of federal and state courts. This argument overlooks the fact that many of the parties involved are tribal members and live on the reservation, where the accident occurred. The tribal forum is thus plainly more convenient for all the parties involved, except Allstate. Allstate also argues that the exercise of tribal jurisdiction would interfere with Montana's ability to regulate insurance. However, the tribe also has a strong interest in adjudicating liability for an accident involving tribal members on the reservation. Finally, Allstate's objections to the legitimacy of process in the tribal court may not be considered as a basis for depriving tribal courts of jurisdiction. *See LaPlante,* 480 U.S. at 18–19, 107 S.Ct. 971.

The district court dismissed this case because it affirmatively concluded that the tribal court had jurisdiction. We decline to go so far, for it appears to us that the dispute arises not from the parties' contractual relationship, as the first *Montana* exception requires, but from alleged conduct governed by the Montana Unfair Calims Settlement Practices Act, MCA § 33–18–242(3). *See Tynes v. Bankers Life Co.,* 224 Mont. 350, 357, 730 P.2d 1115 (1986) (action for breach of implied covenant of good faith and fair dealing is separate tort action independent of underlying insurance contract). Because we hold only that there is a colorable jurisdictional issue, the district court should stay the action while Allstate exhausts its remedies in tribal court.

VACATED and REMANDED.