CHRISTIAN CHILDREN'S FUND INC., a non-profit Virginia corporation, Plaintiff,

v.

CROW CREEK SIOUX TRIBAL COURT; The Honorable Douglas Papendick, present Tribunal Judge; and Hunkpati Project Advisory Council, Inc., a non-profit South Dakota corporation, Defendants.

Civ.No. 993008.

United States District Court,
D. South Dakota,
Central Division.

April 13, 2000.

Tommy Drake Tobin Winner, SD, Stanley E. Whiting Winner, SD, Lewis T. Booker Hunton & Williams Richmond, VA, for plaintiff.

Ramon A. Roubideaux, Roubideaux Law Office, Rapid City, SD, for defendants.

ORDER

KORNMANN, District Judge.

### BACKGROUND

[¶ 1] Plaintiff, Christian Children's Fund, Inc. ("CCF"), is a non-profit corporation with a goal of providing aid to needy children. It has provided assistance to Native American children in South Dakota since at least 1970. CCF is incorporated in and domiciled in the Commonwealth of Virginia. CCF obtains sponsors for children. Sponsors pledge a monthly amount of financial aid and CCF then enters into a letter of agreement with a local organiza-

tion. That local organization administers the programs for the sponsored children.

[¶ 2] On August 11, 1994, a letter of agreement was entered into between CCF and one of the defendants, Hunkpati Project Advisory Council, Inc. ("Hunkpati"). Hunkpati is a non-profit corporation incorporated under South Dakota law (SDCL ch. 47–22) and operated pursuant to South Dakota statutes governing non-profit corporations. Hunkpati's purpose was specifically to administer programs for needy children in the Fort Thompson, South Dakota, area with funds coming from CCF sponsors. Fort Thompson is located within the confines of the Crow Creek Sioux Indian Reservation ("Reservation"). No sponsor lives within the Reservation. The letter agreement, expressly limited in duration, was to expire on June 30, 1995. Provision was made, however, to extend this affiliation agreement if mutually agreeable. On June 28, 1995, the affiliation was extended by a second letter of agreement. Both agreements were signed by Melvin Joseph, an officer of Hunkpati but not a member of the Crow Creek Sioux Tribe ("Tribe"). Neither of the letters of agreement between CCF and Hunkpati nor CCF's United States Policy and Procedures Manual required that members of Hunkpati's board of directors be members of the Tribe. The Tribe did not organize or incorporate Hunkpati, is not mentioned in the letters of agreement, was not a party to the agreements, and did not manage or direct the activities of Hunkpati.

[¶ 3] Disagreements arose between CCF and Hunkpati and CCF withdrew its sponsor funding from Hunkpati on December 20, 1995, as it had the right to do by virtue of the letters of agreement. After termination, Hunkpati filed an action in the Crow Creek Sioux Tribal Court ("tribal court") against CCF in December of 1995. The initial complaint alleged numerous causes of action, including breach of a letter of agreement, interfering with the internal operations of Hunkpati, and controlling the Hunkpati bank account. The complaint sought a judgment in the amount of $500 million and was later modified to include an additional $50 million in punitive damages. Ferris Joseph, a dissatisfied former CCF employee from Sioux Falls, South Dakota, joined as an additional plaintiff. CCF answered, denying tribal court jurisdiction and moving to dismiss.

[¶ 4] In February of 1997, Hunkpati filed in tribal court a first amended complaint against CCF. The amended complaint alleged nine causes of action, including interference with business relations, conspiracy to commit conversion, conversion, unfair employment practices, tortious interference with contract, deceit, fraud, breach of contract, and claimed violations of the sovereignty of the Tribe. In the amended complaint, Hunkpati sought, under each cause of action, 100 million dollars, for a total of 900 million dollars. CCF answered, denying tribal court jurisdiction and moving again to dismiss for lack of personal and subject matter jurisdiction.

[¶ 5] In January of 1998, the tribal court issued a two-page "Opinion and Order", denying the motion to dismiss. CCF appealed the denial of the motion to the Northern Plains Intertribal Court of Appeals and the appellate court affirmed the action of the tribal court.

[¶ 6] CCF instituted this action in federal court on March 3, 1999, asserting jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 25 U.S.C. § 1302(8). CCF filed an amended complaint (Doc. 3) on March 17, 1999. CCF asks this court to declare that the tribal court does not have subject matter or personal jurisdiction over CCF and to enjoin the tribal court from proceeding further in the case. CCF also seeks to recover its costs, disbursements, and attorney fees.

[¶ 7] On December 1, 1999, CCF filed a motion for summary judgment (Doc. 30). CCF filed a statement of undisputed material facts (Doc. 31) and a brief (Doc. 34) in support of the motion. Hunkpati filed a motion to dismiss (Doc. 35) and a supporting brief (Doc. 36). In its brief, Hunkpati concedes that the tribal court and Judge

Douglas N. Papendick of the tribal court have not joined in any motion filed by Hunkpati. They also have never filed an answer to the CCF complaint or amended complaint and have not filed any resistance to the CCF motion for a summary judgment. The Tribe has not sought to intervene or to be otherwise heard in the matters before the court. Hunkpati also filed a brief (Doc. 37) to oppose the motion for summary judgment. Hunkpati did not file, however, any "separate, short, and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried" as required by D.S.D. LR 56.1(C). There maybe serious consequences for failing to file such a statement. "All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." D.S.D. LR 56.1(D). Thus, all facts set forth in the CCF statement of undisputed material facts (Doc. 31) are established for the purpose of the summary judgment motion.

[¶ 8] CCF filed a reply brief (Doc. 40) in support of its motion for summary judgment and a brief (Doc. 41) in opposition to Hunkpati's motion to dismiss the complaint. The parties requested oral argument and oral argument occurred on April 3, 2000.

[¶ 9] This court has jurisdiction over the subject matter and over the parties.

## DECISION

### I. Motion to Dismiss

■ [¶ 10] The District Court must accept the allegations of the amended complaint as true when considering a motion to dismiss under Fed.R.Civ.P. 12(b). *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996), *cert. denied*, 519 U.S. 1149, 117 S.Ct. 1081, 137 L.Ed.2d 216 (1997). Dismissal under Rule 12(b)(6) is appropriate only when it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Dover Elevator Co. v. Arkansas*

*State Univ.*, 64 F.3d 442, 445 (8th Cir. 1995). In other words, the amended complaint should not be dismissed merely because the plaintiff's allegations do not support the particular theories advanced; rather, the Court must determine whether the allegations would justify relief on any possible theory. *See Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir.), *cert. denied*, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

[¶ 11] Hunkpati, in its motion to dismiss, contends that CCF has failed to exhaust its remedies in tribal court and thus its resort to a United States District Court is premature. Hunkpati also alleges that CCF is engaging in forum shopping (Doc. 36). CCF argues (Doc. 41) that it has "only followed a well-worn path of raising the issue of jurisdiction by instituting a declaratory judgment suit in federal court to challenge jurisdiction of a tribal court over an admittedly non-Indian such as CCF."

■ [¶ 12] Tribal courts must in appropriate cases be given the first opportunity to determine whether the tribal court has the power to exercise jurisdiction over non-Indians. *Nat'l Farmers Union Ins. Companies v. Crow Tribe of Indians*, 471 U.S. 845, 856–57, 105 S.Ct. 2447, 2454, 85 L.Ed.2d 818 (1985), The Court of Appeals for the Eighth Circuit has likewise recognized that federal district courts in appropriate cases should not consider a case until tribal court remedies have been exhausted. *Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation*, 27 F.3d 1294, 1300 (8th Cir.1994), *cert. denied*, 513 U.S. 1103, 115 S.Ct. 779, 130 L.Ed.2d 673 (1995), citing *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 19, 107 S.Ct. 971, 978, 94 L.Ed.2d 10 (1987). In some cases not falling within the Tribe's inherent sovereign authority, there is no exhaustion requirement because the tribal court simply lacks authority to adjudicate disputes arising from such conduct. This is clearly the teaching of the Eighth Circuit in *Hornell Brewing Co. v. Rosebud*

*Sioux Tribal Court,* 133 F.3d 1087 (8th Cir.1998). The present case is very likely a case in which exhaustion is not required. Exhaustion, however, has occurred and there is no need to deal with or decide the question of any exhaustion requirement.

[¶ 13] The tribal court considered whether it had personal and subject matter jurisdiction, decided that it did, and denied CCF's motion to dismiss on January 20, 1998 (Doc. 31). CCF appealed to the Northern Plains Intertribal Court of Appeals, the highest court of the Tribe. The parties filed appellate briefs on the question of tribal jurisdiction. The appellate court rendered a decision (Doc. 31), finding jurisdiction and affirming the tribal court's order denying CCF's motion to dismiss. This decision by the appellate court exhausted CCF's tribal court remedies as to challenging jurisdiction. Thus, the question of such jurisdiction is now reviewable in federal court. *Nat'l Farmers Union Ins. Companies,* 471 U.S. at 857, 105 S.Ct. at 2454, *Duncan Energy,* 27 F.3d at 1300, and *United States ex rel. Kishell v. Turtle Mountain Hous. Auth.,* 816 F.2d 1273, 1276 (8th Cir.1987), stating that "... a federal court should stay its hand until tribal remedies are exhausted and the tribal court has had a full opportunity to determine its own jurisdiction...." The tribal court has had a full opportunity and Hunkpati's motion to dismiss should be denied.

## II. Authority to Review Jurisdictional Issue

■ [¶ 14] It is without dispute that if tribal remedies on the issue of jurisdiction have been exhausted, this Court has the authority and the duty to review whether the tribal court properly exercised jurisdiction. *Duncan Energy Co.,* 27 F.3d at 1300. This Court reviews the tribal court's determination of tribal jurisdiction *de novo* because it is a question of federal law. *Id.* The tribal court's findings of fact would be reviewed under the clearly erroneous standard. *Id.*

## III. Motion for Summary Judgment

[¶ 15] The summary judgment standard is well known and has been set forth by this Court in numerous opinions. *See Hanson v. North Star Mut. Ins. Co.,* 1999 D.S.D. 334 ¶ 8, 71 F.Supp.2d 1007, 1009–1010 (1999), *Gardner v. Tripp County,* 1998 D.S.D. 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (1998), *Patterson Farm, Inc. v. City of Britton,* 1998 D.S.D. 34 ¶ 7, 22 F.Supp.2d 1085, 1088–89 (1998), and *Smith v. Horton Indus.,* 1998 D.S.D. 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir. 1995). In considering the motion for summary judgment, this court must view the facts in the light most favorable to defendants and give defendants the benefit of all reasonable inferences that can be drawn from the facts. *Donaho,* 74 F.3d at 897–98.

■ [¶ 16] "Our case law establishes that, absent express authorization by federal statute or treaty, tribal jurisdiction

over the conduct of non-members exists only in limited circumstances." *Strate v. A–1 Contractors,* 520 U.S. 438, 445, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). In *Montana v. United States,* the United States Supreme Court held that the inherent sovereign powers of an Indian tribe do not, as a general proposition, extend to the activities of non-members of the tribe. 450 U.S. 544, 565–66, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). This is sometimes referred to as the "main rule." The Supreme Court did note two exceptions to that general principle, namely that a tribe may (1) regulate by taxation, licensing, or other means, the actions of non-Indians who enter into true consensual relationships with the tribe or its members, or (2) retain other jurisdiction when non-Indians engage in conduct within a reservation which threatens or has some direct effect on the political integrity, economic security, or health and welfare of the tribe. *Id.* The United States Supreme Court, in *County of Yakima v. Confederated Tribes and Bands of Yakima Indian Nation,* 502 U.S. 251, 267, 112 S.Ct. 683, 116 L.Ed.2d 687 (1992), made reference to "the very narrow powers reserved to tribes over the conduct of non-Indians within their reservations." *South Dakota v. Bourland,* 508 U.S. 679, 695 n. 15, 113 S.Ct. 2309, 124 L.Ed.2d 606 (1993) recognized "the reality that after *Montana,* tribal sovereignty over nonmembers 'cannot survive without express congressional delegation,' 450 U.S. at 564, 101 S.Ct. 1245, and is therefore *not* inherent." *Brendale v. Confederated Tribes and Bands of Yakima Indian Nation,* 492 U.S. 408, 430–431, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989), tells us:

> *Montana* suggests that in the special circumstances of checkerboard ownership of lands within a reservation, the tribe has an interest under federal law, defined in terms of the impact of the challenged uses on the political integrity, economic security, or the health or welfare of the tribe. . . .
> The impact must be *demonstrably serious* and *must imperil* the political integrity, economic security, or the health

and welfare of the tribe. (emphasis added)

[¶ 17] As we know from *A–1 Contractors v. Strate,* 76 F.3d 930 (8th Cir.1996), there must be a sufficient and serious tribal interest at issue (as defined in *Montana* ) before the tribal court may validly exercise jurisdiction over non-Indian parties. The Eighth Circuit was affirmed by the United States Supreme Court at 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997). The Eighth Circuit's explanation of *Montana* in *Strate* is obviously binding on tribal courts in the Eighth Circuit.

[¶ 18] Hunkpati argues that *Strate* maybe distinguished on the basis that the case involved two non-Indians involved in a motor vehicle accident on a public highway within the boundaries of the reservation. This contention is rejected. *Strate* is on point in the present case.

## A. True Consensual Relationship

[¶ 19] CCF argues that the facts in this case present no consensual relationship such as might support tribal court jurisdiction under *Montana.* The undisputed facts are as set forth by CCF (Doc. 31) and not opposed by defendants. The only parties to the letters of agreement are CCF, a Virginia corporation, and Hunkpati, a South Dakota corporation. Neither the Tribe nor Tribal members, as already explained, had any connection with these contracts or the administration of them. Hunkpati is not a legal entity or creature of the Tribe. Certain key individuals involved in Hunkpati were not enrolled members in the Tribe. In civil cases arising from Indian reservations, non-member Indians, already residing on a reservation, are treated as non-Indians as to the affairs of that reservation. *See U.S. on Behalf of Cheyenne River Sioux Tribe v. South Dakota,* 105 F.3d 1552, 1559–60 (8th Cir.1997), *cert. denied, South Dakota v. U.S. ex rel. Cheyenne River Sioux Tribe,* 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997).

[¶ 20] In *Strate*, the Supreme Court found that there was no consensual relationship when the dispute "arose between two non-Indians involved in [a] run-of-the-mill [highway] accident." 520 U.S. at 457, 117 S.Ct. 1404. Likewise, this case involves two non-Indians. Obviously, neither party is either a tribe or a tribal member. It is undisputed and clear that there was no consensual relationship with the Tribe or members of that Tribe. There is no attempt here by the Tribe to regulate either Hunkpati or CCF by taxation, licensing, permit or other means. Hunkpati simply filed an action in tribal court and has sought to proceed there.

## B. Conduct Within a Reservation

[¶ 21] The alleged conduct which forms the basis for the complaints in tribal court against CCF did not occur within the Reservation. All decisions and related actions regarding the termination of CCF's involvement with Hunkpati were made and implemented off the reservation (Doc. 31). CCF's activities were supervised from Richmond, Virginia. CCF area coordinators were located in Sioux Falls, South Dakota, and later in Vermillion, South Dakota. Accounting services were performed in Vermillion, South Dakota. Even the Hunkpati bank account was in Chamberlain, South Dakota. All funds were solicited and received off the Reservation. All these locations and activities are off the Reservation.

[¶ 22] The Court of Appeals for the Eighth Circuit has clearly held that tribal jurisdiction does not extend to such off reservation activities:

> The operative phrase is "on their reservations." Neither *Montana* nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations.*

*Hornell,* 133 F.3d at 1091 (emphasis in original). "Thus, because the conduct and activities at issue here did not occur on the Reservation, we do not believe *Montana* 's discussion of activities of non-Indians on fee lands within a reservation is relevant to the facts of this case. More importantly, the parties fail to cite a case in which the adjudicatory power of the tribal court vested over activity occurring outside the confines of a reservation." *Id.*

[¶ 23] Hunkpati argues that its operations were conducted on fee land within the Reservation. This is true, in part. We know that, based upon the "main rule" from *Montana,* the inherent sovereign powers of an Indian tribe do not, as a general proposition, extend to the activities of non-members of the tribe. CCF argues that the Hunkpati operations as conducted on fee land would be immaterial, under *Strate* 's additional exception to the exhaustion rule.

[¶ 24] The exhaustion rule, as already discussed, is that exhaustion of tribal court remedies is required in appropriate cases before a petitioner's claim may be entertained by a district court. *See Nat'l Farmers Union,* 471 U.S. at 857, 105 S.Ct. at 2454, and *Iowa Mutual Ins. Co.,* 480 U.S. at 17, 107 S.Ct. at 977. In *Strate,* the United States Supreme Court narrowed the exhaustion principles discussed in *Nat'l Farmers Union* and *Iowa Mutual.* In *Hornell,* the Eighth Circuit Court of Appeals stressed the narrowing of the exhaustion requirements. The Court of Appeals set forth the *Strate* footnote verbatim:

> When, as in this case, it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by *Montana* 's main rule, it will be equally evident that tribal courts lack adjudicatory authority over disputes arising from such conduct. As in criminal proceedings, state or federal courts will be the only forums competent to adjudicate those disputes. Therefore, when tribal-court jurisdiction over an action such as this one is challenged in federal court, the otherwise applicable exhaustion requirement, must give way, for it would serve no purpose other than delay.

133 F.3d at 1092–93, quoting *Strate*, 520 U.S. at 459 n. 14, 117 S.Ct. 1404 (citations omitted).

[¶ 25] In this instance, it is clear that no federal grant provides for tribal governance of non-members' conduct. *Strate*, 520 U.S. at 459 n. 14, 117 S.Ct. 1404. It is immaterial in this case that Hunkpati's principal place of business was established on fee land within the Reservation. *Strate* and *Hornell* make it clear that exhaustion is not required in such circumstances. It is noteworthy that it was Hunkpati, not CCF, that chose to conduct some business on the Reservation and to establish an office on fee land within the Reservation. If this choice were to govern, any non-Indian entity could move into Indian Country and thus "drag along" another non-Indian party whose operations were all conducted outside the particular reservation. Hunkpati clearly fails to meet the first exception to the "main rule" established in *Montana*.

## C. Threatens or Has Some Direct Effect on the Political Integrity, Economic Security, or Health or Welfare of the Tribe

[¶ 26] The Supreme Court in *Strate* stated:

> Read in isolation, the *Montana* rule's second exception can be misperceived. Key to its proper application, however, is the Court's preface: "Indian tribes retain their inherent power [to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members. . . . But [a tribe's inherent power does not reach] beyond what is necessary to protect tribal self-government or to control internal relations."

520 U.S. at 459, 117 S.Ct. 1404. "The Court, in *Strate*, however, stated that the second *Montana* exception must be narrowly applied. *See* 520 U.S. at 458, 117 S.Ct. 1404, 137 L.Ed.2d 661." *Montana v. King*, 191 F.3d 1108, 1114 (9th Cir.1999). *See also Wilson v. Marchington*, 127 F.3d 805, 814–15 (9th Cir.1997) (applying the second *Montana* exception in a narrow manner), *cert. denied*, 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998). Adjudging in tribal court the rights and conduct of these two non-Indian entities as to the letters of agreement between CCF and Hunkpati is not necessary to preserve "the right of reservation Indians to make their own laws and be ruled by them." *See Williams v. Lee*, 358 U.S. 217, 220, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Applying the second *Montana* exception narrowly and under the undisputed facts of this case, this court cannot find that the termination of the letter of agreement with Hunkpati threatened or had some serious direct effect on the political integrity, economic security, or health and welfare of the Tribe.

## D. Crow Creek Tribal Ordinances and Constitution

[¶ 27] Hunkpati, in arguing that the tribal court has jurisdiction, cites the following ordinance of the Tribe:

> (1) The tribal Court shall have general original jurisdiction over Indians and non-Indians in all matters of civil nature arising within the territorial jurisdiction of the Court.

> (2) The territorial jurisdiction of the Court extends to all territory within the exterior boundaries of the Crow Creek Sioux Indian Reservation.

Crow Creek Sioux Tribal Code § 04–01–01.

[¶ 28] Hunkpati argues that this ordinance is unlike those found in most reservations in South Dakota. Hunkpati is mistaken. Every reported decision involving attempted tribal jurisdiction over non-Indians is premised on a tribal ordinance that is similar to the sweeping ordinance of the Tribe here. For example, R.S.T.L.O.C. § 4-2-6 from the Rosebud Sioux Tribe provides that "the Rosebud Sioux Tribal Court will exercise civil and criminal jurisdiction over all persons within its territorial jurisdiction." In *Hornell*, involving the previously quoted Rosebud ordinance, the

Court of Appeals for the Eighth Circuit quoted from an order of this court:

If providing a forum for its members would be a sufficient reason to confer subject matter jurisdiction upon the tribal courts when a tribal member is a party to a lawsuit, it follows that the tribal courts would always have civil subject matter jurisdiction over non-Indians. There would have been no reason for the discussion in *Montana* regarding the broad general rule of no civil jurisdiction over non-Indians and the two narrow exceptions to that general rule.

133 F.3d at 1093. Hunkpati's argument begs the question. It is an attempt to hoist the flag of tribal jurisdiction by the tribe's own bootstraps.

[¶ 29] As to the Tribal Constitution, most tribal constitutions loosely adhere to a form that originated with the United States Department of Interior. The Crow Creek Sioux Tribal Constitution is somewhat atypical for two reasons. First, in Article VI, which expressly sets forth the "Powers and Duties of the Tribal Council," § 1 provides that the powers are not to be exercised in isolation:

Section 1. The Council of the Crow Creek Reservation shall exercise the following powers, subject to any limitations imposed by the statutes or the Constitution of the United States, and subject further to all express restrictions upon such powers contained in this Constitution and the attached by laws.

George E. Fay, "Charters, Constitutions and By-Laws of the Indian Tribes of North America," part I, the Sioux Tribe of South Dakota 22 (1967). In general, the tribal code does not reflect these limitations. As a result, the limitations imposed by the Constitution of the United States and the common law of this country as interpreted by United States courts, especially with respect to non-members, were, in this case, not properly considered by the tribal court or by the appellate court.

[¶ 30] Second, with specific reference to tribal jurisdiction over non-members, the Constitution is very limited, especially on lands that are not restricted (fee lands). Art. V, § (i) of the Tribe's Constitution limits the regulatory power of the tribe to the conduct of "members" of the Crow Creek Sioux Tribe:

(i) To promulgate and enforce ordinances which shall be subject to the approval of the Commissioner of Indian Affairs governing the conduct of members of the Crow Creek Sioux Tribe, and providing for the establishment of a reservation court in defining its duties and powers.

*Id.* at 23.

[¶ 31] Non-members are mentioned only in one specific instance. In that instance, the jurisdiction of the Tribe is carefully delineated and subject to the approval of the Commissioner of Indian Affairs:

(m) To levy taxes upon members of the Crow Creek Tribe and to require the performance of community labor in lieu thereof, and to levy taxes or license fees, subject to the approval of the Commissioner of Indian Affairs upon non-members doing business within the Reservation.

*Id.* at 23.

[¶ 32] This case does not involve any attempt by the Tribe to "levy taxes or license fees" on CCF or, for that matter, Hunkpati. The Tribe's Constitution cannot be construed to support the type of tribal adjudicatory jurisdiction claimed by Hunkpati in this instance, The expansive claims of tribal jurisdiction set forth in tribal codes, and often adhered to by tribal courts, are not controlling in these cases.

[¶ 33] There is no genuine issue of any material fact and plaintiff is entitled to summary judgment as a matter of law. This court is confident that the Tribe, Hunkpati and the tribal court will obey the mandate of this court, subject, of course, to this court being overturned by a higher court. With that confidence, no injunction will be entered.

## ORDER

[¶ 34] Now, therefore, IT IS ORDERED:

(1) The motion to dismiss (Doc. 35) of Hunkpati Project Advisory Council, Inc., is denied.

(2) Plaintiff's motion for summary judgment (Doc. 30) is granted.

(3) The Crow Creek Sioux Tribal Court does not have subject matter jurisdiction over the action of Hunkpati against CCF.

(4) The Crow Creek Sioux Tribal Court does not have personal jurisdiction over CCF.

(5) Plaintiff's requests for attorney fees are denied and no costs or disbursements are to be taxed.