# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 12-2871

———————————————

DISH Network Service L.L.C.

*Plaintiff - Appellant*

v.

Brian Laducer; Hon. Madonna Marcellais, in her official capacity as Chief Judge
of the Turtle Mountain Band of Chippewa Indians Tribal Court, and Presiding
Judge in Brian Laducer v. DISH Network Service L.L.C., Civil Action No. 09-10122

*Defendants - Appellees*

————————

Appeal from United States District Court
for the District of North Dakota - Bismarck

————————

Submitted: May 15, 2013
Filed: August 5, 2013

————————

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

————————

MURPHY, Circuit Judge.

This appeal grows out of a satellite television contract between DISH Network Service and Brian Laducer, an enrolled member of the Turtle Mountain Band of the Chippewa Indians. Brian used his daughter Lacey's credit card to open his account and DISH charged that card after Brian stopped making payments. Lacey then sued

DISH in state court for consumer fraud and conversion, and DISH removed her action to federal court where it filed a third party complaint against Brian. Brian then filed an abuse of process claim against DISH in tribal court, and DISH moved to dismiss for lack of jurisdiction. The tribal court denied that motion, and the tribal appeals court declined on prudential grounds to hear DISH's appeal until after trial was completed. DISH then moved in the federal district court for a preliminary injunction enjoining the tribal court from conducting a trial on Brian's abuse of process claim. The district court[1] denied the motion, and DISH appeals. We affirm.

I.

Brian Laducer opened a service account with DISH network in July 2007 using the credit card of his daughter, Lacey Laducer. Lacey is also a member of the Turtle Mountain Band. She and her father both reside on the Turtle Mountain Indian Reservation. Brian later opened his own checking account and then paid DISH out of that account. When he stopped making payments, DISH charged $323 to his daughter's credit card. That amount included a pro rated cancellation fee and partial unreturned equipment fee.

Lacey filed a complaint against DISH in North Dakota state court in April 2009 alleging consumer fraud and conversion. Civil Case No. 40-09-C-99 (N.D. D. Ct. April 21, 2009). DISH removed her case to federal district court on August 21, 2009, asserting that a demand letter from Lacey's counsel asking for $175,000 in settlement satisfied the amount in controversy requirement for diversity jurisdiction. Civil Case No. 4:09-cv-00052 (D. N.D. April 21, 2009). On September 1, 2009 DISH filed a third party complaint against Brian in the case it had removed to federal court, alleging conversion, breach of contract, fraud, and implied indemnification. After

_____

[1] The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

DISH filed that third party complaint, but before Brian was served with it, Brian initiated his own lawsuit in tribal court. He alleged there that DISH's third party complaint in the federal case was an abuse of process. Civil Case No. 09-10122 (Turtle Mountain Tribal Ct. Sept. 15, 2009). Brian likely became aware of DISH's third party complaint prior to service on him because Lacey's counsel had received notice of its filing. Brian's abuse of process complaint stated without elaboration that "Dish Network has taken advantage and abused the legal process to harm Mr. Laducer."

The federal district court remanded Lacey's case against DISH, No. 4:09-cv-00052, back to state court on March 8, 2010, after concluding that the amount in controversy almost certainly was less than $75,000. DISH then moved in state court, No. 40-9-C-99, to join Brian as an indispensable party in Lacey's case. The state court granted that motion, and DISH brought a third party complaint against Brian identical to the one previously filed in federal court. Brian responded in the state court matter by bringing a counterclaim there charging DISH with abuse of process. At this point there were then pending two abuse of process claims by Brian against DISH: one in tribal court (No. 09-10122) relating to the federal case, and one in state court (No. 40-09-C-99) relating to state court proceedings.

The following claims were then before the North Dakota state court in No. 40-09-C-99: (1) Lacey's consumer fraud and conversion claim against DISH for charging her $323, (2) DISH's third party complaint against Brian for conversion, breach of contract, fraud, and implied indemnification, and (3) Brian's counterclaim against DISH for abuse of process. In January 2011 the state court granted summary judgment to DISH on one of the issues before it: Brian's counterclaim for abuse of process. Eight months later on September 13, 2011, the state court dismissed the remaining claims on the basis that the tribal courts possessed exclusive jurisdiction (Lacey's conversion and consumer fraud claim against DISH and DISH's third party complaint against Brian). No party appealed these orders.

Still pending in the Turtle Mountain tribal court was Brian's separate lawsuit brought there (No. 09-10122), alleging abuse of process based on DISH's filing in federal court. DISH moved to dismiss Brian's case for lack of tribal jurisdiction on the ground that the company is not a tribal member. The tribal court denied the motion, deciding that it possessed jurisdiction over the case under Montana v. United States. 450 U.S. 544 (1981). In Montana, the Supreme Court held that tribal courts retain civil jurisdiction over non Indians "who enter consensual relations with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Id. at 565. DISH appealed to the Turtle Mountain Tribal Court of Appeals, which declined on prudential grounds to review the question of jurisdiction until after the tribal court's trial.

In May 2012 DISH brought this motion in federal district court seeking a preliminary injunction barring the tribal court from conducting a trial on the abuse of process claim. Civil Case No. 4:12-cv-00058 (D. N.D. May 18, 2012). Brian and the Honorable Madonna Marcellais, the presiding tribal court judge, were named as defendants. The federal district court denied the motion. While it concluded that DISH would be irreparably harmed if it were forced to litigate in a tribal forum which lacked jurisdiction, and that neither Brian nor Judge Marcellais would suffer any harm from granting the motion, the federal district court ruled that there was tribal court jurisdiction over the controversy under the first Montana exception and thus DISH was unlikely to prevail on the merits of its jurisdictional challenge.

II.

DISH appeals the denial of its motion for preliminary injunction, arguing that the federal district court erred in not finding that DISH had a substantial likelihood of prevailing on its jurisdictional challenge. It asserts that the court misapplied the test for whether to grant a preliminary injunction, which requires consideration of : (1) the threat of irreparable harm to the movant, (2) the weight of this harm as compared to

any injury an injunction would inflict on other interested parties, (3) the probability that the moving party will succeed on the merits, and (4) the public interest. Gen. Motors Corp. v. Harry Brown's LLC, 563 F.3d 312, 316 (8th Cir. 2009). The burden is on the movant to establish the need for a preliminary injunction, and on appeal from its denial we review the district court's "factual findings for clear error, its legal conclusions de novo, and its exercise of equitable judgment for abuse of discretion." Id.

DISH contends that it would be irreparably injured by litigating in a tribal court that lacked jurisdiction and that the tribal courts in this case plainly lack jurisdiction because Brian's abuse of process tort claim occurred off of tribal land and is unrelated to the contract he signed with DISH. Brian argues that the tribal courts possess jurisdiction because the abuse of process claim is intimately connected to the dispute over his contract with DISH which concerned activity on tribal territory, and that DISH failed to exhaust its tribal remedies as required before seeking federal court intervention.

We first address the potential for irreparable harm to DISH. The district court determined that DISH "would suffer irreparable harm if forced to litigate in a Tribal Court that likely does not have jurisdiction," citing Crowe & Dunleavy, P.C. v. Stidham, 640 F.3d 1140, 1157–58 (10th Cir. 2011). That precedent arose in very different circumstances, however. In Crowe & Dunleavy the financial injury plaintiffs faced was found to be irreparable based on "the unique circumstances of this case" where sovereign immunity would have prevented the plaintiffs from recovering fees paid in the course of litigation. Id. at 1158. The reasoning went no further, and the Tenth Circuit expressly declined to decide in that case whether being forced to litigate in a tribal forum could qualify as an irreparable injury. Id. at 1158 n.10. Thus, this precedent does not carry the weight assigned to it by the district court.

There is no reason to believe that DISH's financial injury in this case would be anything other than the normal costs of litigation. Economic loss, on its own, is not an irreparable injury so long as the losses can be recovered. Iowa Utils. Bd. v. FCC, 109 F.3d 418, 426 (8th Cir. 1996). Hence, it is doubtful that DISH would suffer an irreparable injury if forced to litigate in tribal court. Since the absence of irreparable injury is by itself sufficient to defeat a motion for a preliminary injunction, Guy Carpenter & Co. v. John B. Collins Assocs., 179 F. App'x 982, 983 (8th Cir. 2006) (per curiam), this factor supports affirmance of the district court's denial of a preliminary injunction. See Friends of Lake View Sch. Dist. Incorporation No. 25 v. Beebe, 578 F.3d 753, 758 (8th Cir. 2009).

We have previously recognized the probability of the moving party's success on the merits as the "most significant" preliminary injunction factor, S & M Constructors., Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992) (per curiam), and that is the main basis on which the district court relied in denying DISH's motion. The Supreme Court has announced two exceptions to the principle that Indian tribes generally do not have jurisdiction over "the activities of nonmembers of the tribe." Montana, 450 U.S. at 565. First, a "tribe may regulate . . . the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Id. Second, a tribe retains "inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." Id. at 566.

As the Supreme Court has explained, examination of tribal court jurisdiction "should be conducted in the first instance in the Tribal Court itself," as part of the congressional "policy of supporting tribal self-government and self-determination." Nat'l Farmers Union Ins. Cos. v. Crow Tribe, 471 U.S. 845, 856 (1985). Allowing tribal courts to make an initial evaluation of jurisdictional questions serves several

important functions, such as assisting in the orderly administration of justice, providing federal courts with the benefit of tribal expertise, and clarifying the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation. Id. at 856–57. Consistent with these principles, "considerations of comity direct that tribal remedies be exhausted" before a federal court can exercise jurisdiction over a challenge to tribal jurisdiction. Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 15 (1987) (citing Nat'l Farmers Union, 471 U.S. at 857). Exhaustion includes both an initial decision by the tribal trial court and the completion of appellate review. Id. at 17 ("Until appellate review is complete, the . . . Tribal Courts have not had a full opportunity to evaluate the claim and federal courts should not intervene."). This rule is prudential, however, and it is not an absolute bar to federal jurisdiction. Strate v. A-1 Contractors, 520 U.S. 438, 450 (1997). If it is "plain" that tribal jurisdiction does not exist and the assertion of tribal jurisdiction is for "no purpose other than delay," the exhaustion requirement does not apply. Id. at 459 n.14.

DISH's sole argument in its brief for why it does not need to exhaust tribal remedies was its claim that the tribal courts plainly lack jurisdiction, see id., but at oral argument and in a later letter, DISH also contended that it did exhaust. It bases this assertion on the fact that the tribal trial court issued a decision and the tribal court of appeals had discretionary authority to review it (though it chose not to exercise its authority at that time). DISH cites a pair of Ninth Circuit cases involving discretionary interlocutory review. See Ford Motor Co. v. Todecheene, 488 F.3d 1215, 1217 (9th Cir. 2007) (tribal remedies exhausted once the tribal appeals court "either resolves the jurisdictional issue or denies a petition for discretionary interlocutory review"); Elliott v. White Mountain Apache Tribe, 566 F.3d 842, 847 n.4 (9th Cir. 2009) (tribal remedies not exhausted where tribal appeals court lacks discretionary authority to hear an interlocutory appeal regarding jurisdiction).

One of the policy rationales favoring exhaustion is that it enables tribal courts to clarify the factual and legal issues relevant to evaluating any jurisdictional question.

Nat'l Farmers Union, 471 U.S. at 856–57.  Particularly where the factual record remains quite thin, as it is in this case, prudence may caution a tribal appeals court to refrain from deciding jurisdictional questions until after trial is completed and the factual record developed and clarified.  The purpose of requiring exhaustion in the tribal court is to provide for the "orderly administration of justice in the federal court . . . by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed."  Id. at 856.

The record here does not require us to decide whether or not a discretionary decision by the tribal appellate court to decline review of the jurisdictional question satisfies a party's obligation to exhaust tribal remedies.  That is because it is well established that we do not consider arguments "raised for the first time either at oral argument or in a 28(j) letter."  Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aero. Workers, 501 F.3d 912, 917 n.3 (8th Cir. 2007).  Since DISH did not raise this argument in its initial brief, it is waived.  We thus consider only DISH's argument made in its brief that it is "plain" that the tribal court lacks jurisdiction.

Our court has not discussed how "plain" the issue of tribal court jurisdiction needs to be before the exhaustion requirement can be waived, but the Supreme Court indicated in Strate that the bar is quite high.  According to the Court, the requirement to exhaust should be waived only when the issue of tribal court jurisdiction is invoked for "no other purpose than delay."  520 U.S. at 459 n.14.  In other words the exhaustion requirement should be waived only if the assertion of tribal court jurisdiction is frivolous or obviously invalid under clearly established law.  In circumstances where the law is murky or relevant factual questions remain undeveloped, the prudential considerations outlined in National Farmers Union require that the exhaustion requirement be enforced.  See 471 U.S. at 856–57.

DISH asserts that the lack of tribal jurisdiction is obvious because Brian's abuse of process allegation is a tort claim for behavior by DISH done off tribal lands, i.e.,

its filing of a third party complaint against Brian at the federal courthouse in Minot, North Dakota. The first Montana exception to the general principle that tribes cannot exercise jurisdiction over non Indians applies to contract claims occurring on tribal lands. Montana, 450 U.S. at 565. DISH contends that Montana and all of its progeny presume that the challenged conduct must have occurred on tribal territory. See, e.g., id. at 565 ("Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations"); Plains Comm. Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 332 (2008) ("Montana and its progeny permit tribal regulation of nonmember conduct inside the reservation that implicates the tribe's sovereign interests."). According to DISH, Brian's abuse of process claim relates to the third party complaint it filed when Lacey Laducer's case was still in federal court. The federal courthouse that had jurisdiction over Lacey's case at that time is in Minot, not on the Turtle Mountain Indian Reservation. Since the filing challenged by Brian occurred outside tribal territory, DISH claims there is an insurmountable barrier to the existence of tribal court jurisdiction.

Several factors prevent us from accepting DISH's position as "plain." Its argument is that abuse of process occurs at the location where the allegedly abusive legal filing was made, which in this case was Minot, North Dakota. Under North Dakota law, however, abuse of process is not tied to the place of filing, but rather to the use of a legal filing as a form of extortion. The North Dakota Supreme Court has observed that it "is what is done in the course of negotiation, rather than the issuance of any formal use of the process itself, which constitutes the tort." Wachter v. Gratech, Co., 608 N.W.2d 279, 287–88 (N.D. 2000) (emphasis added) (quoting Prosser and Keeton, The Law of Torts § 121, at 898 (5th ed. 1984)). The record does not disclose where the "course of negotiation" occurred which Brian complained was abused. Since under North Dakota law abuse of process occurs through the extortionate effect the process has on the target, rather than the filing of process itself, the location of the tort may properly be wherever the alleged victim resides, which in this case was on the Turtle Mountain Indian reservation.

Even if the alleged abuse of process tort occurred off tribal lands, jurisdiction would not clearly be lacking in the tribal court because the tort claim arises out of and is intimately related to DISH's contract with Brian and that contract relates to activities on tribal land. Certainty is not required because our review at this stage of the proceeding is solely to establish whether the lack of tribal jurisdiction is "plain," that is, whether its absence is so obvious that the invocation of tribal jurisdiction serves no other purpose than delay. Strate, 520 U.S. at 459 n.14. At this stage we are not called on for a definitive resolution of the question. Unless jurisdiction is plainly absent, the question of tribal jurisdiction is one for the tribal courts to make in the first instance. Nat'l Famers Union, 471 U.S. at 856–57.

DISH relies on an inapposite decision by our court in Hornell Brewing Co. v. Rosebud Sioux Tribal Court, 133 F.3d 1087 (8th Cir. 1998). In Hornell, the Rosebud Sioux Tribe had sued a brewing company for using the Crazy Horse name in its national marketing of malt liquor. Crazy Horse was a former Sioux Indian chief, and the tribe alleged defamation, violation of the right of publicity, negligent infliction of emotional distress, and violation of the Lanham Act. Id. at 1089. It was undisputed that the brewery did not manufacture, sell, or distribute Crazy Horse Malt Liquor on the reservation. Id. at 1091. The brewing company had independently chosen the Crazy Horse name for its product, and there was no contractual relationship between the brewing company and the tribe. Thus, the claim that the company's activities had a "direct effect on the political integrity, the economic security, or the health and welfare of the tribe," Montana, 450 U.S. at 566, was too attenuated to support tribal court jurisdiction. Hornell, 133 F.3d at 1093. Since we deemed it sufficiently clear that the tribal court lacked jurisdiction, exhaustion of tribal remedies was not required. Id.

This case is significantly different from Hornell, for this case did arise out of a contract governing activities on tribal lands, namely, the contract DISH entered into to provide service to Brian on the reservation. DISH cites Attorney's Process &

-10-

Investigation Services v. Sac & Fox Tribe, 609 F.3d 927 (8th Cir. 2010), for its claim that there is no tribal jurisdiction over tort claims such as abuse of process if they arise from a filing off tribal land. In Attorney's Process, we considered whether there was tribal court jurisdiction over a conversion claim arising out of monies paid under a contract between an Indian party and a non Indian. Id. at 940. There, the district court had found tribal court jurisdiction under the second Montana exception. Id. at 937. We reversed, after observing that in that case neither the receipt nor the retention of the challenged funds was alleged to have occurred inside Indian territory. Id. at 940–41. We suggested that the "operative question for jurisdictional purposes" under the first Montana question would be whether the company's conversion claim had "a sufficient nexus to the consensual relationship" formed through an existing contract between the tribe and a non Indian contractor. Id. at 941.

It is not "plain" that a tribal court lacks authority to exercise jurisdiction over tort claims closely related to contractual relationships between Indians and non Indians on matters occurring on tribal lands. Where, as here, the abuse of process claim is predicated on claims made by a party litigating a contract suit with an Indian over which there is tribal jurisdiction, it is not plain that the tribal court lacks jurisdiction over the connected abuse of process claim. When contracting with Brian to provide satellite television, DISH could have reasonably anticipated that any litigation over this contract would occur in tribal courts. See id.

III.

Since it is not "plain" that the tribal courts lack jurisdiction over Brian Laducer's abuse of process complaint, the order of the district court denying a preliminary injunction is therefore affirmed.

_____