JERRY E. SMITH, Circuit Judge,
dissenting:
For the first time ever, a federal court of appeals upholds Indian tribal-court tort jurisdiction over a non-Indian, based on a consensual relationship, without a finding that jurisdiction is “necessary to protect tribal self-government or to control internal relations.” Montana v. United States, 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). The majority’s alarm *178 ing and unprecedented holding fax- outpaces the Supreme Court, which has never upheld Indian jurisdiction over a nonmember defendant.
This ruling profoundly upsets the careful balance that the Supreme Court has struck between Indian tribal governance, on the one hand, and American sovereignty and the constitutional rights of U.S. citizens, on the other hand. The majority’s bold announcement is conspicuous for its audacity, given that this court hears few Indian cases and decides little Indian law. I respectfully dissent.
I.
The majoi-ity pays only lip service to, but does not heed, the Supreme Court’s guidance that “exercise of tribal power beyond what is necessary to protect tribal self-government or to control internal relations is inconsistent with the dependent status of the tribes, and so cannot survive without express congressional delegation.” Id. One manifestation of that maxim is that Indian tribes lack “inherent sovereign authority to exercise criminal jurisdiction over non-Indians.” Id. at 565, 101 S.Ct. 1245 (citing Oliphant v. Suquamish Indian Tribe, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978)). Absent express congressional delegation, therefore, store manager Townsend could not have been criminally prosecuted in tribal court for the alleged molestation of John Doe.[1]
The principle on which Oliphant relies, moreover, “supportfs] the general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.” Id. Although the Supreme Court has not yet explicitly adopted an Oliphant-like rule for civil cases, it has “never held that a tribal court had jurisdiction over a nonmember defendant.” Nevada v. Hicks, 533 U.S. 353, 358 n. 2, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001). It remains an open question whether there are any circumstances under which the Court would find that a tribal court retains civil jui-isdietion over a non-Indian defendant such as Dolgencorp.[2]
The civil action here—an ordinary tort action, despite the seriousness of the alleged offense—comes nowhere close to implicating Indian self-government or internal tribal relations.[3] It is therefore easy to conclude that any putative exception to the well-established restriction on jurisdiction over non-Indian defendants could never extent to the instant facts. Even assuming arguendo that the Supreme Court would recognize an exception, the logic and stx-ucture of Montana, dictate that its exceptions apply only where adjudicatory or regulatory authority “is needed to preserve the right of reservation Indians to make their own laws and be ruled by them.”[4] The Court recently reiterated *179 the limited nature of tribal-court jurisdiction over nonmember defendants by making explicit that Montana’s first exception, like its second, “grants Indian tribes nothing beyond what is necessary to protect tribal self-government or to control internal relations.”[5]
The majority concedes that “[i]t is hard to imagine how a single employment relationship between a tribe member and a business could ever have such an impact.”
I agree: Montana and its progeny contemplate a profoundly narrow scope for tribal-court jurisdiction over nonmembers, not least because “the Bill of Rights and the Fourteenth Amendment do not of their own force apply to Indian tribes.”[6] I also agree with the district court that “in no sense can it reasonably be said that the Tribal Court’s assuming jurisdiction over the Does’ claim against Dolgen[corp] ... is necessary to protect tribal self-government or control internal relations.”[7]
*180 “The Montana rule, therefore, and not its exceptions, applies to this case.” Strate, 520 U.S. at 459, 117 S.Ct. 1404. Doe was free to pursue his claims in the state court open to all Mississippi tort claimants. See id. Because Dolgencorp’s conduct indisputably falls outside the Choctaw Indians’ authority to “protect tribal self-government or to control internal relations,” Montana, 450 U.S. at 544, 101 S.Ct. 1245, the jurisdictional inquiry should be easily and rightfully at an end.
This court therefore should reverse the district court and render judgment for Dolgencorp without reaching the first Montana exception. I will address it, nonetheless, because I also disagree with the majority that there was a legally sufficient nexus between Dolgencorp’s participation in a short-term, unpaid internship program and the Ml body of Indian tort law.
II.
Before today, no circuit court has upheld Indian-court jurisdiction, under Montana's first exception, over a tort claim against a nonmember defendant.[8] That exception provides that “[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.” Montana, 450 U.S. at 565, 101 S.Ct. 1245.
Assuming “the tribal tort at issue here is a form of regulation,” Plains Commerce *181 Bank, 554 U.S. at 332, 128 S.Ct. 2709, “Montana’s consensual relationship exception requires that [it] have a nexus to the consensual relationship itself,” Atkinson, 532 U.S. at 656, 121 S.Ct. 1825. The relevant consensual relationship is Dolgen-corp’s voluntary participation in the Youth Opportunity Program. The majority er-rantly contends that, “[h]aving agreed to place a minor tribe member in a position of quasi-employment on Indian land in a reservation, it would hardly be surprising for Dolgencorp to have to answer in tribal court for harm caused to the child in the course of his employment.”
That reasoning is foreclosed by Plains Commerce Bank, 554 U.S. at 338,128 S.Ct. 2709. There is no reason Dolgencorp should could reasonably have anticipated that, solely on the basis of its participation in a, short-term, unpaid internship program, it would be subject to the entire—and largely undefined—body of Indian tribal tort law. As the Supreme Court has “emphasized repeatedly in this context, when it comes to tribal regulatory authority, it is not in for a penny, in for a Pound.” Id. (citation and internal quotation marks omitted).
The elements of Doe’s claims under Indian tribal law are unknown to Dolgencorp and may very well be undiscoverable by it.[9] Choctaw law expressly incorporates, as superior to Mississippi state law, the “customs ... and usages of the tribes.” Choctaw Tribal Code § 1-1-4. “Where doubt arises as to the customs and usages of the Tribe, the court may request the advice of persons generally recognized in the community as being familiar with such customs and usages.” Id. Although the claims that Doe wishes to press against Dolgencorp have familiar state-law analogues, the majority’s aggressive holding extends to the entire body of tribal tort law—including any novel claims recognized by the Choctaws but not by Mississippi. Cf. Plains Commerce Bank, 554 U.S. at 338,128 S.Ct. 2709.
Because Dolgencorp could not have anticipated that its consensual relationship with Doe would subject it to any and all tort claims actionable under tribal law, there is an insufficient nexus to satisfy Montana’s first exception. For the majority to hold otherwise raises serious due-process concerns insofar as Dolgencorp will be forced to defend Doe’s claims in an unfamiliar forum without the benefit of constitutional protections.[10]
*182 Even accepting as accurate that, in the majority’s words, “[i]t is surely within the tribe’s regulatory authority to insist that [Doe] not be sexually assaulted by the employees of [Dolgeneorp],” it cannot be true that, as the majority insists, “[t]he fact that the regulation takes the form of a tort duty that may be vindicated by individual tribe members in tribal court makes no difference.” Although “a tribe’s adjudicative jurisdiction does not exceed its legislative jurisdiction,” Strate, 520 U.S. at 453, 117 S.Ct. 1404, it does not necessarily follow that the two are coextensive. There are good reasons to construe the former more narrowly: Montana ’s first exception envisages discrete regulations consented to ex ante; the majority, to the contrary, upholds an unprecedented after-the-fact imposition of an entire body of tort law based on Dolgencorp’s participation in a brief, unpaid internship program.
And finally, the majority’s pronouncement is vague and unworkable in practice. On the one hand, the majority opines that “[h]aving agreed to place a minor tribe member in a position of quasi-employment on Indian land in a reservation, it would hardly be surprising for Dolgeneorp to have to answer in tribal court for harm caused to the child in the course of his employment.” That broad statement would authorize a tort action in Indian court if, for example, the minor had slipped on a poorly-maintained floor at the store and had cut his finger. In the majority’s words, that would violate “the safety of the child’s workplace.”
On the other hand, the majority emphasizes that “[i]t is surely within the tribe’s regulatory authority to insist that a child working for a local business not be sexually assaulted by the employees of the business.” Is the majority recognizing tribal-court authority over any tort related to the voluntary job-training program, or only over especially despicable incidents such as sexual assaults? What if the boy had fatally hit his head on the floor? Or would it have to be an intentional tort—a slap on the face, perhaps, for bad performance? Is the majority’s unprecedented expansion of Indian-court jurisdiction limited to only highly reprehensible acts, or only to “really bad” acts, or to “sort of bad acts,” or to any minor, negligent act, or only to situations in which, in the majority’s words, “the tribe is protecting its own children on its own land?
The limits to the majority’s dramatic holding remain a secret. In short, the majority gives no real indication of what it means by foreseeability, which means that the next actor in the place of Dolgeneorp will have no idea whether it can be subjected to the uncertainties of the Indian courts.[11]
III.
Although Dolgeneorp failed to assert timely that the tribal court lacks jurisdiction to adjudicate Doe’s claim of negligent hiring, training, and supervision—because Doe failed adequately to allege and prove *183 that the conduct underlying that claim occurred on the reservation—I would not stop there, as the majority does. This case presents the sort of “extraordinary circumstances” that justify considering a claim presented for the first time on appeal. See N. Alamo Water Supply Corp. v. City of San Juan, Tex., 90 F.3d 910, 916 (5th Cir.1996).
“Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it.” Id. The issue raised by Dolgencorp is a pure question of law that requires no factual development in the district court. Whether its argument is waived turns on whether it has met its burden to show that a miscarriage of justice would result from the panel’s failure to consider it. See AG Acceptance Corp. v. Veigel, 564 F.3d 695, 700 (5th Cir.2009).
To identify a miscarriage of justice, “we have often considered whether the alleged error is obvious or merely debatable.” Id. at 701. In this case, the alleged error is obvious. As the majority notes, “Montana and its progeny permit tribal regulation of nonmember conduct inside the reservation that implicates the tribe’s sovereign interests.” Plains Commerce Bank, 554 U.S. at 332, 128 S.Ct. 2709 (emphasis added). Montana contains an exception for “civil jurisdiction over non-Indians on their reservations.” Id. at 329,128 S.Ct. 2709 (emphasis added). The Court has given no hint that tribal jurisdiction extends to activity taking place outside of Indian country, as did the hiring, training, and supervision here,[12]
Failure to consider the argument regarding off-reservation conduct causes significant harm to Dolgencorp and does violence to the law. Cf. AG Acceptance, 564 F.3d at 701. Dolgencorp will be required, without usual procedural and constitutional protections and in an unfamiliar forum, to defend its off-reservation training, hiring, and supervision procedures. The majority opinion also has profound implications for the due-process rights of other non-Indians who do business on Indian lands in Mississippi, Louisiana, and Texas. The majority’s conclusion is flawed, because the Indian court lacks jurisdiction over Doe’s claim of negligent hiring, training, and supervision.
As already explained, the Indian court also lacks jurisdiction over the on-reservation conduct for which Doe seeks to hold Dolgencorp vicariously liable, because the conduct does not threaten Indian self-government, nor is there a foreseeable nexus between the whole body of tribal tort law and Dolgencorp’s voluntary participation in a brief internship program. The majority’s stunning pronouncement expands Indian-court jurisdiction over nonmember defendants far beyond the scope permitted by the Supreme Court or any other appellate authority. It is grave error from which I respectfully dissent.

. Cf. Strata v. A-1 Contractors, 520 U.S. 438, 453, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997) ("As to nonmembers ... a tribe’s adjudicative jurisdiction does not exceed its legislative jurisdiction.").

. See Hicks, 533 U.S. at 358 n. 2, 121 S.Ct. 2304; see also Jesse Sixkiller, Procedural Fairness: Ensuring Tribal Civil Jurisdiction After Plains Commerce Bank, 26 Ariz. J. Int’l & Comp. L. 779, 797 (2009) ("[T]he Court seems to be inching toward an Oliphant-like rule based on fairness to nonmembers.... ”).

. The majority’s unsupported statement that "the ability to regulate the working conditions (particularly as pertains to health and safety) of tribe members employed on reservation land is plainly central to the tribe's power of self-government" is—in addition to being alarming for its breadth—nothing more than the majority's ipse dixit.

. Strate, 520 U.S. at 459, 117 S.Ct. 1404 (internal quotation marks omitted). Although TTEA v. Ysleta del Sur Pueblo, 181 F.3d 676, 684 (5th Cir.1999), relied on Iowa Mutual Insurance Co. v. LaPlante, 480 U.S. 9, 18, 107 *179 S.Ct. 971, 94 L.Ed.2d 10 (1987), for the proposition that “civil jurisdiction over nonlndi-ans on reservation lands ‘presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute,’ " that presumption was abrogated by subsequent Supreme Court authority. See Hicks, 533 U.S. at 381, 121 S.Ct. 2304 (Souter, J., concurring) ("[I]n explaining and distinguishing Iowa Mutual, we confirmed in Strate what we had indicated in Montana: that as a general matter, a tribe’s civil jurisdiction does not extend to the ‘activities of non-Indians on reservation lands, Iowa Mutual, [480 U.S.] at 18 [107 S.Ct. 971] ... and that the only such activities that trigger civil jurisdiction are those that fit within one of Montana's two exceptions.’’). circumstances in which the Court will approve such exercises of tribal authority."). Moreover, the claim that court statements that run contrary to one’s legal assertions can be ignored or avoided as "dictum ” or “dicta" is often the last refuge when favorable authority is scant. “Even assuming it is dictum, however, we give serious consideration to this recent and detailed discussion of the law by a majority of the Supreme Court.” Gearlds v. Entergy Servs., Inc., 709 F.3d 448, 452 (5th Cir.2013). The Supreme Court's “recent dictum ., . provides the best, though not infallible, guide to what the law is.” Reich v. Cont’l Cas. Co., 33 F.3d 754, 757 (7th Cir.1994). As compared to other dicta, "[d]icta of the Supreme Court are, of course, another matter.” United States v. Becton, 632 F.2d 1294, 1296 n. 3 (5th Cir. 1980). In Gearlds, a recent panel of this court viewed itself legally bound by Supreme Court dicta to the extent that, despite our rule of orderliness, it declared prior Fifth Circuit precedent to have been implicitly overruled by that dicta.

. Atkinson Trading Co. v. Shirley, 532 U.S. 645, 658-59, 121 S.Ct. 1825, 149 L.Ed.2d 889 (2001) (citations and internal quotation marks omitted); see Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 332, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008) (“Montana expressly limits its first exception to the ‘activities of nonmembers,’ 450 U.S., at 565 [101 S.Ct. 1245] ..., allowing these to be regulated to the extent necessary ‘to protect tribal self-government [and] to control internal relations,’ id., at 564 [101 S.Ct. 1245].”).
The majority dismisses the relevant language in Plains Commerce Bank as dictum, but the scholarly consensus agrees that Plains Commerce Bank built on a principle articulated in Montana and reinforced by its progeny. See, e.g., Sarah Krakoff, Tribal Civil Judicial Jurisdiction over Nonmembers: A Practical Guide for Judges, 81 U. Colo. L.Rev. 1187, 1190 (2010) {“IJicks and Plains Commerce, like Strate, refrained from adopting a categorical prohibition against tribal civil jurisdiction over nonmembers, but further narrowed the

. Hicks, 533 U.S. at 383, 121 S.Ct. 2304 (Souter, J., concurring). As aptly stated by the Chief Justice of the Supreme Court of the Citizen Potawatomi Nation of Oklahoma, Director of the U.C.L.A. American Indian Studies Center, and Co-Director of the Native Nations Law and Policy Center, "Though seemingly capacious, these two exceptions to the so-called Montana rule have been construed exceedingly narrowly by subsequent Supreme Court decisions." Angela R. Riley, Indians and Guns, 100 Geo. L.J. 1675, 1720 (2012), excerpted in IX Scholarly Perspectives 101 (U.C.L.A. School of Law Fall 2013).

. Dolgen Corp. v. The Mississippi Band of Choctaw Indians, No. 4:08-CV-22, 2008 WL *180 5381906, at *3 (S.D.Miss. Dec. 19, 2008); cf. Strate, 520 U.S. at 457-58, 117 S.Ct. 1404 ("Undoubtedly, those who drive carelessly on a public highway running through a reservation endanger all in the vicinity, and surely jeopardize the safety of tribal members. But if Montana's second exception requires no more, the exception would severely shrink the rule.”).

. One recent survey reports only four cases upholding tribal-court jurisdiction over a nonmember defendant, and just two involving tort law. See Krakoff, supra note 5, at 1236. In McDonald v. Means, 309 F.3d 530 (9th Cir.2002), the court upheld tribal jurisdiction over a tort suit that occurred on a Bureau of Indian Affairs road over which the tribe retained gatekeeping authority. The Ninth Circuit, however, does not acknowledge that Montana 's general rule applies to non-Indian conduct on reservation trust land. See, e.g., Water Wheel Camp Recreational Area, Inc. v. LaRance, 642 F.3d 802, 813-14, 819 (9th Cir. 2011) (rejecting application of Montana but upholding jurisdiction over trespass claim under second exception). Both the Choctaw Supreme Court and the district court a quo have ruled, in light of dicta in Hicks and Plains Commerce Bank, that the Ninth Circuit’s narrow application of Montana is incorrect, a ruling that the tribal defendants do not challenge.
The only decision from a federal circuit that found tribal-court jurisdiction over a tort claim against a non-member defendant is Attorney's Process & Investigation Servs., Inc. v. Sac & Fox Tribe of Miss. in Iowa, 609 F.3d 927 (8th Cir.2010), which involved Montana 's second exception. The court found that defendants’ outrageous alleged conduct—"API's armed agents entered onto tribal trust land without permission of the elected governing body, stormed buildings vital to the Tribe’s economy and its self government, committed violent torts against tribal members, forcibly seized sensitive information related to the Tribe’s finances and gaming operations, and damaged tribal property”— "menacefd] the ‘political integrity, the economic security, [and] the health [and] welfare’ of the Tribe to such a degree that it ‘imperilfed] the subsistence’ of the tribal community.' ” Id. at 939 (quoting Plains Commerce Bank, 554 U.S. at 341, 128 S.Ct. 2709 (alterations in original)). In DISH Network Service L.L.C. v. Laducer, 725 F.3d 877, 884 (8th Cir.2013), the court invoked Montana's first exception in denying a preliminary injunction against Indian court jurisdiction over an unexhausted tort claim, but the court postponed "a definitive resolution of the question.”

. Even for the tribes and their members, the status of the law may be unknowable in light of Montana and the tribal reliance on custom and practice, "leaving tribes to wonder as to the scope of tribal civil jurisdiction over nonmembers operating on non-Indian lands within Indian Country." Riley, supra note 6, at 1720. Accord Philip P. Frickey, (Native) American Exceptionalism in Federal Public Law, 119 Harv. L.Rev. 431, 435 (2005) ("Even the Chief Justice of the North Dakota Supreme Court recently said that, ‘in matters involving jurisdiction on Indian reservations, we often are unable to know what the law is until the United States Supreme Court tells us what it is.’ ”).

. Justice Souter explained this serious due-process concern as follows:
The ability of nonmembers to know where tribal jurisdiction begins and ends, it should be stressed, is a matter of real, practical consequence given “[t]he special nature of [Indian] tribunals,” which differ from traditional American courts in a number of significant respects. To start with the most obvious one, it has been understood for more than a century that the Bill of Rights and the Fourteenth Amendment do not of their own force apply to Indian tribes. Although the Indian Civil Rights Act of 1968 (ICRA) makes a handful of analogous safeguards enforceable in tribal courts, “the guarantees are not identical,” and there is a "definite trend by tribal courts" toward the view that they ”ha[ve] leeway in interpreting” the ICRA’s due process and equal protection clauses and "need not follow the U.S. Supreme Court precedents jot-for- *182 jot.' ” In any event, a presumption against tribal-court civil jurisdiction squares with one of the principal policy considerations underlying Oliphant, namely, an overriding concern that citizens who are not tribal members be "protected .. . from unwarranted intrusions on their personal liberty.”
Hicks, 533 U.S. at 383-84, 121 S.Ct. 2304 (Souter, J„ concurring) (citations omitted).

. The majority’s facile statement that "under the facts of this case, we need not reach the hypothetical factual scenarios posited by the dissenting opinion” is a duck, not an answer. The majority suggests no test by which future parties in Dolgencorp’s circumstance can possibly know when they might be hauled into Indian court pursuant to a consensual relationship” such as the apprentice program.

. See also Philip Morris USA, Inc. v. King Mountain Tobacco Co., 569 F.3d 932, 938 (9th Cir.2009) C'[T]ribal jurisdiction is, of course, cabined by geography: The jurisdiction of tribal courts does not extend beyond tribal boundaries."); Hornell Brewing Co. v. Rosebud Sioux Tribal Court, 133 F.3d 1087, 1091 (8th Cir.1998) ("[Njeither Montana nor its progeny purports to allow Indian tribes to exercise civil jurisdiction over the activities or conduct of non-Indians occurring outside their reservations.”). But see DISH Network, 725 F.3d at 883-85.