# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1680

_____

David Vipond

*Plaintiff - Appellant*

v.

David A. DeGroat, in his official capacity as Judge of White Earth Tribal Court;
Dustin Roy, in his official capacity as Director of Natural Resources, White Earth
Department of Natural Resources

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 23, 2025
Filed: February 5, 2026

_____

Before GRUENDER, STRAS, and KOBES, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Appellant David Vipond, a non-Indian, seeks to install a high-capacity surface water pump on his fee land within the reservation of the White Earth Nation (the "Nation") in northwestern Minnesota. In May 2023, the Nation's duly elected governing body, the Reservation Business Committee ("RBC"), enacted an

ordinance requiring that persons seeking to install such a pump within or near the reservation obtain a permit from the White Earth Division of Natural Resources ("WEDNR"). Vipond did not apply for a WEDNR permit but obtained a state permit from Minnesota's Department of Natural Resources ("MDNR"). Shortly thereafter, the WEDNR sued Vipond in the Nation's Tribal Court (the "Tribal Court") and obtained a preliminary injunction blocking the pump's installation. Vipond appealed that injunction to the Nation's Tribal Court of Appeals (the "Tribal Court of Appeals"), arguing, in part, that the Tribal Court lacked subject matter jurisdiction to enforce the ordinance's regulation of a nonmember's conduct on his fee land. The Tribal Court of Appeals converted the preliminary injunction into a temporary restraining order and remanded the case with instructions for the Tribal Court to hold a hearing and issue findings concerning its own jurisdiction.

Before that hearing, Vipond sued appellee Tribal Court Judge David DeGroat and appellee Dustin Roy, the Director of the WEDNR, in the United States District Court for the District of Minnesota, seeking, in part, a declaration that the Tribal Court lacked subject matter jurisdiction over the WEDNR's lawsuit under *Montana v. United States*, 450 U.S. 544 (1981). Vipond then moved for a preliminary injunction prohibiting further litigation in the Tribal Court pending resolution of his federal case. The district court[1] denied Vipond's motion for a preliminary injunction and stayed the case until completion of tribal adjudication on his jurisdictional claims. We affirm.

## I.    Background

Vipond resides and operates a farm on 611 acres of fee land near the western edge of the Nation's reservation, which comprises roughly 830,000 acres in northwestern Minnesota. In March 2023, Vipond applied to the MDNR for a permit to install a high-capacity surface water pump within his land to withdraw up to 65.2

---

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota.

million gallons of water per year for agricultural irrigation. Vipond estimated the pump would draw up to 1,000 gallons of water per minute from the Wild Rice River, which flows west through the Nation's reservation before emptying into the Red River of the North at the Minnesota-North Dakota border. In April 2023, the MDNR opened a request for comments period on Vipond's application and solicited comments from the Nation as well as several state and local agencies. The Nation did not participate in the comments process and did not respond to other attempts by the MDNR to solicit its views on Vipond's application.

On May 5, 2023, while Vipond's state permit application was pending, the RBC enacted the White Earth Reservation Groundwater and Surface Water Protection Ordinance (the "Ordinance"). As enacted, the Ordinance established a permitting requirement for installed or proposed "high-capacity" water pumps situated within the Nation's reservation or a five-mile buffer area.[2] Under the Ordinance, a permit applicant must demonstrate to the WEDNR that a pump meets minimum standards of operation, namely, that "when evaluated individually or cumulatively, [it] shall not cause a significant reduction in the quantity of groundwater available for reasonable use . . . within 5 miles" and "shall not cause adverse effects on surface waters within 5 miles." The Ordinance provides applicants with a right to obtain judicial review of an adverse permit decision in the Tribal Court.

Vipond did not apply for a WEDNR permit. On August 11, 2023, the MDNR issued his state permit alongside Findings of Fact estimating Vipond's proposed pump would withdraw roughly one percent of the Wild Rice River's average daily flow and approximately twelve percent of its lowest daily flow recorded between 2015 and 2020. Based on these estimates, the MDNR found that "[n]egative impacts of the [pump's] proposed appropriation on the water supply in the Wild Rice River are not anticipated." Accordingly, the MDNR concluded that Vipond's proposed

---

[2]The Ordinance defines a high-capacity water pump as one that draws more than ten thousand gallons of water per day or more than one million gallons of water per year.

appropriation would be "reasonable, practical and [would] adequately protect public safety and promote public welfare . . ." *See* Minn. Stat. § 103G.315(3).

Two weeks later, the WEDNR sued Vipond in the Tribal Court, seeking, in part, preliminary and permanent injunctive relief against his pump's installation. The WEDNR alleged that its enforcement of the Ordinance against Vipond was consistent with *Montana*, which endorsed tribal authority over nonmember conduct "within its reservation . . . that threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe" (hereafter, the "tribal sovereignty exception"). *See* 450 U.S. at 565-66. On September 12, 2023, without notice to Vipond and before his time to answer had elapsed, the Tribal Court issued a preliminary injunction against the pump's installation in an *ex parte* order. Shortly thereafter, Vipond answered the WEDNR's complaint and raised several defenses, including that the Tribal Court lacked subject matter jurisdiction over the WEDNR's lawsuit. The Tribal Court refused to lift the preliminary injunction. Vipond appealed to the Tribal Court of Appeals, the Nation's court of last resort.

In October 2023, the Tribal Court of Appeals reversed and remanded. The court held that the Tribal Court did not afford Vipond an opportunity to be heard prior to issuing its preliminary injunction and failed to address his jurisdictional arguments. It converted the Tribal Court's preliminary injunction into a temporary restraining order and directed the court to hold a hearing and provide "detailed findings on [its] jurisdiction and other criteria for issuance of an injunction." On remand, the parties agreed to delay the Tribal Court's jurisdictional hearing until February 2025 due to the illness of one party's counsel.

In June 2024, the RBC amended the Ordinance to suspend its permitting requirement with respect to high-capacity water pumps already permitted by the MDNR as of May 5, 2023.[3] Shortly thereafter, Vipond sued appellees Roy and

---

[3]Vipond's pump remained subject to the Ordinance because the MDNR did not issue his permit until August 2023.

Judge DeGroat in the district court, seeking, in part, a declaration that the Tribal Court lacked subject matter jurisdiction under *Montana* and a permanent injunction against further litigation in the Tribal Court.[4] Vipond then moved for a preliminary injunction against further tribal litigation pending the resolution of his federal case.

In February 2025, with Vipond's motion for a preliminary injunction pending before the district court, the Tribal Court held a two-day evidentiary hearing concerning Vipond's jurisdictional challenges. The court heard live testimony from seven expert witnesses contesting the extent to which Vipond's pump, specifically, and high-capacity pumps, generally, would affect resources on the Nation's reservation, including wild rice crops, minnow, leach, and walleye harvests, and sturgeon habitats. Following the hearing, the court ordered the parties to submit proposed findings of fact and conclusions of law concerning its subject matter jurisdiction under the tribal sovereignty exception.

One week later, the district court denied Vipond's motion for a preliminary injunction without prejudice. The court concluded that Vipond must exhaust tribal adjudication before pursuing relief in federal court, meaning that he must litigate tribal jurisdiction to a final judgment in the Tribal Court and, if necessary, in the Tribal Court of Appeals. In doing so, the district court rejected Vipond's argument that "it [was] 'plain' that [the Nation's] jurisdiction [did] not exist" under the tribal sovereignty exception. *See DISH Network Serv. L.L.C. v. Laducer*, 725 F.3d 877, 883 (8th Cir. 2013) (quoting *Strate v. A–1 Contractors*, 520 U.S. 438, 459 n.14 (1997)). On the basis that "reasonable minds [could] easily differ" over whether the Tribal Court retained subject matter jurisdiction under the exception, the district court concluded that tribal jurisdiction was not "so frivolous or plainly contradictory to established law" to relieve Vipond of his obligation to exhaust tribal adjudication.

---

[4]After the filing of Vipond's federal complaint, Judge DeGroat recused himself from hearing the WEDNR's lawsuit and the matter was reassigned.

Vipond appeals, arguing the district court erred in failing to waive the tribal exhaustion rule. While his appeal was pending before this court, the Tribal Court dismissed the WEDNR's lawsuit against Vipond for want of jurisdiction. Although it concluded that the WEDNR possessed regulatory jurisdiction to enforce the Ordinance against nonmembers within the reservation, the Tribal Court nonetheless disclaimed its subject matter jurisdiction. On November 12, 2025, Vipond and the WEDNR each appealed elements of the Tribal Court's ruling to the Tribal Court of Appeals, where tribal proceedings remain pending.[5]

## II. Discussion

We review *de novo* a district court's application of the tribal exhaustion doctrine. *Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians*, 317 F.3d 840, 849 (8th Cir. 2003). Because binding precedent does not clearly establish that the Tribal Court lacks subject matter jurisdiction over the WEDNR's lawsuit, we affirm the denial of Vipond's motion for a preliminary injunction on tribal exhaustion grounds.

Typically, judicial review of "the existence and extent of a tribal court's jurisdiction . . . should be conducted in the first instance in the Tribal Court itself." *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 855-56 (1985). Consistent with that principle, "a federal court should stay its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction," *Strate*, 520 U.S. at 449 (citation modified), meaning after "an initial decision by the tribal trial court and the completion of [tribal] appellate review." *DISH Network*, 725 F.3d at 882; *see also Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 17 (1987) ("At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts."). Therefore, "until [tribal] appellate review is complete, . . . federal courts should not

---

[5]We take no position on the merits of the Tribal Court's jurisdictional analysis and ruling. The parties' tribal proceedings are relevant to our resolution of this case only insofar as they establish that Vipond has not exhausted tribal adjudication.

intervene" to address challenges to tribal jurisdiction. *See WPX Energy Williston, LLC v. Jones*, 72 F.4th 834, 837-38 (8th Cir. 2023) (citation modified).

That said, the exhaustion rule is "prudential" rather than "an absolute bar to federal jurisdiction," and therefore subject to certain exceptions. *See DISH Network*, 725 F.3d at 883. As relevant to this appeal, a party need not exhaust tribal adjudication where "it is plain" the tribal courts lack jurisdiction such that tribal adjudication "would serve no purpose other than delay." *See Strate*, 520 U.S. at 459 n.14. This exception applies "only if the assertion of tribal court jurisdiction is frivolous or obviously invalid under clearly established law." *WPX Energy Williston, LLC*, 72 F.4th at 838. "In circumstances where the law is murky or relevant factual questions remain undeveloped," we have "require[d] that the exhaustion requirement be enforced." *DISH Network*, 725 F.3d at 883.

Applying this precedent, the district court concluded tribal exhaustion was necessary because the parties advanced "equally developed arguments" on the impact of Vipond's pump on the Wild Rice River and reservation resources, such that it was not "so frivolous or plainly contradictory to established law" to consider the pump's operation "exactly the sort of non-member activity" that tribes may regulate under the tribal sovereignty exception. Vipond asks us to reverse that holding for three reasons, none of which is persuasive.

**A.**

First, Vipond contends that the tribal exhaustion rule does not apply to a party challenging tribal jurisdiction under the tribal sovereignty exception. We have previously rejected that proposition. *See Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Rsrv.*, 27 F.3d 1294, 1299-1301 (8th Cir. 1994) (reversing district court, in part, because tribal court is "to determine in the first instance" whether the tribal sovereignty exception permitted tribe to enforce its tax and employment laws against an unaffiliated company). Nonetheless, Vipond appeals to subsequent case law, including one case from this circuit in which we did not

require exhaustion before resolving a party's challenge to tribal jurisdiction under the exception. *See Fort Yates Pub. Sch. Dist. No. 4 v. Murphy ex rel. C.M.B.*, 786 F.3d 662, 672 (8th Cir. 2015). But *Fort Yates* did not depart from precedent. On the contrary, we based our exhaustion holding on the well-established exception for cases where tribal jurisdiction is "plainly lack[ing]." *See id*. The other federal appellate cases cited by Vipond are no different. *See, e.g., Evans v. Shoshone-Bannock Land Use Pol'y Comm'n*, 736 F.3d 1298 (9th Cir. 2013) (holding that a plaintiff "need not exhaust tribal remedies" because "the tribal court plainly lacks jurisdiction"); *Burlington N. R. Co. v. Red Wolf*, 196 F.3d 1059, 1065-66 (9th Cir. 1999) (same). Therefore, we reaffirm that there is no categorical exemption to the exhaustion rule for parties challenging tribal jurisdiction under the tribal sovereignty exception.

### B.

Second, Vipond argues that the tribal sovereignty exception plainly does not permit tribal regulation of a nonmember's appropriation of water within his own fee land. If so, the Tribal Court clearly lacked subject matter jurisdiction over the WEDNR's suit against Vipond, rendering tribal exhaustion unnecessary. *See Strate*, 520 U.S. at 453 ("[A] tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction."). The district noted this argument failed to present "a very close call." We think otherwise. Even so, we ultimately agree that exhaustion is appropriate because the Nation's assertion of authority over Vipond in these circumstances is not "frivolous or obviously invalid under clearly established law." *See WPX Energy,* 72 F.4th at 838.

"[T]ribes do not, as a general matter, possess authority over non-Indians who come within their borders," such that "efforts by a tribe to regulate nonmembers," like Vipond, are "presumptively invalid." *See Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 328, 330 (2008). "The burden rests on [the Nation] to establish that [the tribal sovereignty exception] vested the Tribal Court with jurisdiction to hear" the WEDNR's lawsuit to enjoin Vipond from installing a high-

capacity water pump within his fee land. *See McGowan v. Tix*, 161 F.4th 1118, 1124 (8th Cir. 2025). Because the tribal sovereignty exception applies only to conduct that "imperil[s] the subsistence" of the tribal community such that "tribal power must be necessary to avert catastrophic consequences," *Plains Com. Bank*, 554 U.S. at 341, "that burden is difficult to meet." *McGowan*, 161 F.4th at 1124.

The district court concluded the Nation had plausibly met that burden because it advanced facts showing Vipond seeks to withdraw "considerable amounts of water" from the Wild Rice River and that doing so would threaten tribal health and welfare. Viewing Vipond's proposed pump in isolation, however, we cannot square that conclusion with *Plains Commerce*. Although the parties dispute the potential effect of Vipond's pump on reservation resources, the Nation does not contest that Vipond's planned appropriation of 65.2 million gallons of water annually would amount to roughly two percent of the volume extracted each year by wells and pumps already operating on the reservation. It is implausible that the marginal effect of Vipond's extraction could so devastate the Nation's resources as to "imperil [its] subsistence" or constitute a "catastroph[e]." *See Plains Com. Bank*, 554 U.S. at 341. The MDNR's Findings of Fact as well as the amended Ordinance's permit exemption for pumps operating on the reservation as of May 2023 underscore this point. The record simply does not support the proposition that Vipond's pump will "imperil" reservation resources to a greater degree than the existing wells and pumps the Nation has elected not to regulate. *See id.* Therefore, the Nation has not made a plausible case that Vipond's proposed pump is the tipping point for the sort of catastrophic harm that would justify regulation under the tribal sovereignty exception.

Vipond contends that this settles that the district court erred in requiring exhaustion. We disagree. Vipond's argument assumes that the Nation must establish that his specific conduct poses "catastrophic consequences" to invoke the tribal sovereignty exception. *See id.* The Supreme Court's decision in *United States v. Cooley*, 593 U.S. 345 (2021) suggests otherwise. There, the Court applied the exception to a tribal police officer's detention of a non-Indian in possession of drugs

-9-

and weapons on reservation land because "[t]o deny a tribal police officer authority to search and detain" in such circumstances "would make it difficult for tribes to protect themselves against ongoing threats." *Id.* at 351. The Court did not consider whether Cooley imperiled the subsistence of the tribal community but found it sufficient that his conduct fit within a general class of "ongoing threats" to tribal "health or welfare," such as "non-Indian drunk drivers, transporters of contraband, or other criminal offenders operating on [reservation] roads . . . ." *Id.* In doing so, the Court left open the possibility that the exception confers tribal jurisdiction over nonmembers engaged in on-reservation conduct that, in the aggregate, poses "catastrophic" threats. *See Plains Com. Bank*, 554 U.S. at 341.

Vipond cautions against that reading, correctly noting that *Cooley* did not concern the enforcement of tribal law against a nonmember. *See* 593 U.S. at 353 (noting detention of Cooley did not "subject [him] to tribal law"). But that fact does not resolve whether we must consider threats posed by a specific nonmember's conduct or the entire class of such conduct when applying the exception. At a minimum, the law is "murky" on that issue. *See DISH Network*, 725 F.3d at 883; *compare Cooley*, 593 U.S. at 350-51 *with Plains Com. Bank*, 554 U.S. at 341 (noting the sale of land at issue "hardly imperils the subsistence or welfare of the Tribe") (citation modified) and *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1138 (8th Cir. 2019) (concluding parties' specific failure to pay royalties did not "imperil the subsistence of the tribal community") (citation modified). Moreover, as the extensive tribal record indicates, the Nation has advanced a non-frivolous case that the increased extraction of water by new high-capacity pumps on the reservation will deplete resources that are vital to the Nation's health and welfare. Therefore, the law does not clearly establish that the Nation's assertion of authority over Vipond in these circumstances is so "frivolous or obviously invalid under established law" as to exempt him from the tribal exhaustion rule. *See WPX Energy*, 72 F.4th at 838.

## C.

Lastly, Vipond argues exhaustion is unnecessary because the WEDNR's lawsuit is defective for failure to join an indispensable party—the state of Minnesota—as a defendant. *See* Fed. R. Civ. P. 19(a). Construing the tribal proceedings as a de facto challenge to the MDNR's permitting standards, Vipond asserts that Minnesota is a required party that the WEDNR cannot join to its tribal action because of sovereign immunity. Therefore, in his view, the WEDNR's lawsuit is worthy of dismissal under the federal rules and thus "serve[s] no purpose other than delay." *See Strate*, 520 U.S. at 459 n.14; Fed. R. Civ. P. 12(b)(7).

We disagree. Whether or not Minnesota is an indispensable party under Rule 19 has no bearing on the necessity of exhaustion. For one, the White Earth Rules of Civil Procedure govern the Nation's courts, and it is for those courts to interpret whether the state of Minnesota is an indispensable party under those rules. *See, e.g.*, *Iowa Mut. Ins. Co.*, 480 U.S. at 16 ("[T]ribal courts are best qualified to interpret and apply tribal law."); *Runs After v. United States*, 766 F.2d 347, 352 (8th Cir. 1985) ("[R]esolution of . . . disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the [federal] district court."). More importantly, Rule 19 is not jurisdictional. *See Warner v. First Nat'l Bank of Minneapolis*, 236 F.2d 853, 857 (8th Cir. 1956) ("The issue of want of indispensable parties is not a jurisdictional one."). Because Minnesota's alleged indispensability does not implicate the Tribal Court's subject matter jurisdiction, it cannot exempt Vipond from the tribal exhaustion rule.

Therefore, we conclude the district court did not err in denying Vipond's motion for a preliminary injunction and staying his federal case until the completion of tribal adjudication.

## III. Conclusion

Accordingly, we affirm the judgment of the district court.

_____